**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAPRI SUN GMBH, <br><br>        *Plaintiff*, <br><br>     vs. <br><br> AMERICAN BEVERAGE CORPORATION, <br><br>        *Defendant*. | Civil Action No. _____ <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Capri Sun GmbH ("Capri Sun"), by and through its undersigned counsel, as and for its Complaint against Defendant American Beverage Corporation ("Defendant" or "ABC"), hereby alleges as follows based on knowledge of its own actions, and on information and belief as to Defendant's actions (unless indicated otherwise):

## NATURE OF THE ACTION

1.     This is primarily a breach of contract action.  Defendant is breaching the parties' license agreement by using Plaintiff's iconic, trademark-protected CAPRI SUN pouch for fruit-flavored beverages after the parties' agreement expired.

2.     Plaintiff owns an incontestable federal trademark registration in the United States for the unique, distinctive and iconic design of the pouch that it uses to offer CAPRI SUN brand fruit-flavored beverages:

| U.S. Trademark Reg. No. | Registration Date | Image |
|:---:|:---:|:---:|
| 1,418,517 | November 25, 1986 |  <br><br> (the "CAPRI SUN Pouch Trademark") |

3.      On July 1, 2016, Plaintiff and non-party Faribault Foods, Inc. ("Faribault") duly executed a license agreement (the "License Agreement").  Attached hereto as **Exhibit A** is a true and correct copy of the License Agreement.  On or about October 27, 2016, Faribault assigned its rights under the License Agreement to Defendant ABC.

4.      While the License Agreement was in effect, Defendant had ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Defendant terminated the License Agreement on March 26, 2018.    The License Agreement subsequently expired on July 26, 2018.

5.      On information and belief, Defendant ███████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████

6.      Alternatively, on information and belief, Defendant ████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████

7.      Despite the expiration of the License Agreement, and despite the fact that Plaintiff sent Defendant multiple protest letters, demanding that Defendant cease offering for sale any Licensed Products, post termination (including post expiration of any agreeable sell-off period), Defendant continues to offer Licensed Products for sale and continues to use Plaintiff's iconic CAPRI SUN Pouch Trademark.  Accordingly, Plaintiff brings this action against Defendant for

breach of contract, as well as for trademark and trade dress infringement, dilution, and unfair competition under federal and New York law.

## THE PARTIES

8.    Plaintiff Capri Sun is a Gesellschaft mit beschränkter Haftung (limited liability company) organized and existing under the laws of Germany, with its principal place of business located at Rudolf-Wild-Straße 86-98, Eppelheim, 69214, Germany.

9.    Defendant ABC is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business located at 1 Daily Way, Verona, Pennsylvania, 15147.

## JURISDICTION AND VENUE

10.    The amount in controversy of this action exceeds $75,000, exclusive of interest and costs.  Plaintiff Capri Sun is a German company.  Defendant ABC is a Pennsylvania company.  Based on the foregoing, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.

11.    The claims for federal trademark infringement, trademark dilution, trade-dress infringement, and unfair competition asserted *infra* in Counts II-VI, respectively, arise under the Trademark Act of 1946 (as amended), namely, 15 U.S.C. §§ 1051 *et seq*.  Therefore, this Court has subject matter and original jurisdiction over Counts II-VI pursuant to 15 U.S.C. § 1121.

12.    The claims for trademark infringement, trade-dress infringement, unfair competition, and dilution asserted *infra* in Counts VII-XII, respectively, arise under New York common law and statutory law, and are so related to the federal claims asserted in Counts II-VI, that they form part of the same case or controversy.  Therefore, this Court has supplemental jurisdiction over Counts VII-XII, pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

13.    Paragraph 11.4 of the License Agreement, titled "Governing Law Venue," provides *in toto*:



14.    Therefore, pursuant to ¶ 11.4 of the License Agreement, (i) this Court has personal jurisdiction over Defendant ABC, and (ii) venue is proper in this judicial district.

15.    This Court also has personal jurisdiction over Defendant ABC pursuant to § 302(a)(1) of the NEW YORK CIVIL PRACTICE LAW AND RULES ("CPLR").  Upon information and belief, Defendant ABC transacts and solicits business on a regular, systemic, and continuous basis within the State of New York (including within this judicial district), and Plaintiff's claims arise out of these transactions and solicitations of business.

16.    This Court also has personal jurisdiction over Defendant ABC pursuant to CPLR § 302(a)(2).  As alleged *infra*, Defendant ABC has committed a tortious act within the State of New York (including within this judicial district), and Plaintiff's claims arise out of this tortious act.

17.    Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because Defendant's wrongful acts and conduct, as alleged *infra*, occurred in substantial part in this judicial district.

18.    Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3) because, as alleged *supra*, Defendant is subject to personal jurisdiction in this judicial district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**I.    The License Agreement**

19.    On July 24, 2015 Plaintiff's predecessor-in-interest, Deutsche SiSi-Werke Betriebs GmbH ("SiSI")[1], commenced the lawsuit styled *Deutsche SiSi-Werke Betriebs GmbH v. Faribault Foods, Inc.*, Case No. 1:15-cv-09750, in the United States District Court for the Southern District of New York (the "Lawsuit").

20.    The Lawsuit concerned Faribault Foods, Inc.'s ("Faribault") unauthorized use of Plaintiff's CAPRI SUN Pouch Trademark.

22.    On October 27, 2016, Faribault duly assigned its rights and obligations under the License Agreement to Defendant ABC.

23.    Paragraph 5 of the License Agreement, titled "Term," provides, in pertinent part:

24.    Paragraph 5.2.3 of the License Agreement provides *in toto*:

25.    On March 26, 2018, Defendant ABC provided Plaintiff with written notice of Defendant ABC's intent to terminate the License Agreement under ¶ 5.2.3 thereof.

26.    The License Agreement terminated

---

[1] On September 1, 2018, SiSi formally changed its corporate name to Plaintiff Capri Sun GmbH. Plaintiff duly recorded this name change with the United States Patent and Trademark Office on December 17, 2018.

27.    From October 27, 2016 to July 26, 2018, ¶ 2.2.1 of the License Agreement provided Defendant ABC with "█████████████████████████████████ ████████████████████████████████████."

28.    Paragraph 1.1 of the License Agreement defines "Licensed Products" as "████████████████████████████████████████████████.

29.    Paragraph 1.3 of the License Agreement defines "Trademark" as "███████ ████████████████████████

30.    The '517 Registration covers Plaintiff's CAPRI SUN Pouch Trademark.

31.    Paragraph 6.3 of the License Agreement, titled "Validity of the Trademark," provides *in toto*:

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████

32.    Schedule B to the License Agreement includes images of 47 different products.

33.    Paragraph 3.2 of the License Agreement ████████████████████████ ████████████████████████████████████████████.

34.    Because the 47 products shown in Schedule B to the License Agreement ██ ████████████████████████████, those 47 products constitute Licensed Products under ¶ 1.1 of the License Agreement.

35.    Paragraph 3.3 of the License Agreement provides, in pertinent part:

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████



36.    Paragraph 5.3.1 of the License Agreement, titled "Cessation of Use," provides, in pertinent part:



37.    Paragraph 5.3.2 of the License Agreement, titled "Existing Inventory," provides *in toto*:



38.    Defendant ABC is required to pay Plaintiff ███████████████████ ████████████████████████████████████████████████ pursuant to ¶ 4.2 of the License Agreement.

39.    Defendant ABC is required to report to Plaintiff, ████████████████ ██████████████████████████████████, pursuant to ¶ 4.3 of the License Agreement.

40.    Defendant ABC is required to pay to Plaintiff ██████████████████ █████████████, pursuant to ¶ 5.3.2 of the License Agreement.

II.     **Capri Sun's Intellectual Property**

A.  Capri Sun's Pouch Trademark

41.     Since 1978, Capri Sun, its predecessors-in-interest, and its licensees, have continuously and exclusively used the CAPRI SUN Pouch Trademark on, for, and in connection with the advertising, marketing, promotion, distribution, offering for sale, and sale of fruit-flavored beverages throughout the world (including, without limitation, in United States commerce, and this judicial district).

42.     The CAPRI SUN Pouch Trademark is distinctive, unique and arbitrary when used for fruit-flavored beverages.

43.     Fruit-flavored beverages offered under the CAPRI SUN Pouch Trademark have been the subject of regular, widespread, and unsolicited media coverage throughout the world (including the United States and this judicial district).

44.     For example, fruit-flavored beverages offered under the CAPRI SUN Pouch Trademark have been widely advertised in media publications and other types of advertisements for several decades.

45.     Since 1978, Plaintiff, its predecessor-in-interest, and its licensees have spent (and spend) hundreds of millions of dollars on advertising, marketing, promoting, distributing, offering for sale, and selling fruit-flavored beverages under the CAPRI SUN Pouch Trademark throughout the world (including the United States, and this judicial district).

46.     Since 1978, Plaintiff, its predecessor-in-interest, and its licensees have sold billions of dollars' worth of fruit-flavored beverages under Plaintiff's CAPRI SUN Pouch Trademark.  For example, during the period 2009 through 2014 alone, Plaintiff sold over $7

billion dollars' worth of fruit-flavored beverages in the United States under its iconic CAPRI SUN Pouch Trademark, and over sold $10 billion dollars' worldwide.

47. Because of the aforementioned advertising, marketing, and promotional efforts by Plaintiff, its predecessor-in-interest, and its licensees, as well as the widespread media coverage and commercial success of fruit-flavored beverages offered under Plaintiff's CAPRI SUN Pouch Trademark, consumers associate the CAPRI SUN Pouch Trademark uniquely with Plaintiff.

48. Plaintiff's CAPRI SUN Pouch Trademark is famous among the general consuming public when used for fruit-flavored beverages by virtue of Plaintiff, its predecessor-in-interest, and its licenses' decades of continuous and exclusive use of Plaintiff's CAPRI SUN Pouch Trademark, the aforementioned advertising, marketing, and promotion efforts, and the aforementioned widespread media coverage and commercial success of fruit-flavored beverages offered under Plaintiff's CAPRI SUN Pouch Trademark.

49. In the course of using and protecting Plaintiff's CAPRI SUN Pouch Trademark, Plaintiff (by and through its predecessor-in-interest) acquired U.S. Trademark Registration No. 1,418,517 (the "'517 Registration") on November 25, 1986, which covers Plaintiff's CAPRI SUN Pouch Trademark (as reproduced *infra*) in Int. Cls. 32 for fruit juice drinks containing water. Attached hereto as **Exhibit B** is a true and correct copy of the '517 Registration Certificate.

50. While prosecuting what matured in the '517 Registration, Plaintiff (by and through its predecessor-in-interest) submitted evidence of its CAPRI SUN Pouch Trademark having acquired secondary meaning, including, for example: (a) that the CAPRI SUN Pouch Trademark had been used for five years prior to registration, (b) survey and research studies, evidencing that the CAPRI SUN Pouch Trademark had become a source identifier for Plaintiff's

fruit-flavored beverages offered under the CAPRI SUN Pouch Trademark, and (c) that more than $26,000 million had been spent on advertising fruit-flavored beverages under the CAPRI SUN Pouch Trademark during the five years prior to registration

51.    The '517 Registration is in effect, valid, and subsisting.

52.    The '517 Registration is incontestable pursuant to 15 U.S.C. § 1065.

53.    The '517 Registration is conclusive evidence of the validity of the CAPRI SUN Pouch Trademark.

54.    The '517 Registration is conclusive evidence of the validity of the registration of the CAPRI SUN Pouch Trademark.

55.    The '517 Registration is conclusive evidence of Plaintiff's ownership of the CAPRI SUN Pouch Trademark.

56.    The '517 Registration is conclusive evidence of Plaintiff's exclusive right to use the CAPRI SUN Pouch Trademark in commerce throughout the United States for the goods specified in the '517 Registration.

57.    The CAPRI SUN Pouch Trademark, and the goodwill of the business symbolized and appurtenant thereto, represent valuable assets of Plaintiff.

58.    The '517 Registration represents a value asset of Plaintiff.

59.    Plaintiff, its predecessor-in-interest, and its licensees, have used the CAPRI SUN Pouch Trademark in United States commerce for the goods covered by the '517 Registration continuously since its issuance on November 25, 1986.

60.    Plaintiff plans to continue using its CAPRI SUN Pouch Trademark in United States commerce on, for, and in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and sale of fruit-flavored beverages.

B. <u>Capri Sun's Packaging Trade Dress</u>

61.     As reproduced *infra*, the packaging used for Plaintiff's CAPRI SUN brand fruit-flavored beverages includes (i) color images of fruit that correspond with the flavored beverage in the packaging; (*e.g.*, cherries and grapes for the flavor Fruit Punch); (ii) directly beneath these color images of fruit, a literal spelling of the flavored beverage in the packaging (*e.g.*, "Fruit Punch"); and (iii) the literal spelling of the flavored beverage appearing in a color that corresponds with the flavored beverage in the packaging (*e.g.*, red for the flavor Fruit Punch) (the foregoing collectively the "CAPRI SUN Packaging Trade Dress"):



62.     As show in in paragraph 61 *supra*, Plaintiff's CAPRI SUN Packaging Trade Dress has a consistent look and feel throughout Plaintiff's line of fruit-flavored beverages.

63.     Plaintiff's CAPRI SUN Packaging Trade Dress is unique and arbitrary for packaging that contains fruit-flavored beverages.

64.     Plaintiff draws consumers' attention to its CAPRI SUN Packaging Trade Dress by prominently advertising, marketing, and promoting fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress at www.caprisun.com and www.parents.caprisun.com.

65.     Consumers receive nationwide exposure to fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress at national retailers such as Walmart and Giant Eagle.

66.     Fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress have been the subject of regular, widespread, and unsolicited media coverage throughout the world (including the United States and this judicial district).

67.     Since 1978, Plaintiff, its predecessor-in-interest, and its licensees have spent (and spend) millions of dollars on manufacturing, distributing, advertising, marketing, and promoting fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress throughout the world (including the United States, and this judicial district).

68.     Since 1978, Plaintiff, its predecessor-in-interest, and its licensees have sold billions of dollars' worth of fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress.

69.     Because of the aforementioned advertising, marketing, and promotional efforts by Plaintiff, its predecessor-in-interest, and its licensees, as well as the widespread media coverage and commercial success of fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress, consumers associate fruit-flavored beverages featuring the CAPRI SUN Packaging Trade Dress uniquely with Plaintiff.

70.     Plaintiff's CAPRI SUN Packaging Trade Dress is ornamental and used on the packaging for fruit-flavored beverages solely for aesthetic and marketing purposes.

71.     Plaintiff's CAPRI SUN Packaging Trade Dress, neither in whole nor in part, is essential to the use of fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress.

72.     Plaintiff's CAPRI SUN Packaging Trade Dress, neither in whole nor in part, affects the cost or quality of fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress.

73.     The CAPRI SUN Packaging Trade Dress represents a valuable asset of Plaintiff.

74.     Plaintiff plans to continue using its CAPRI SUN Packaging Trade Dress in United States commerce on, for, and in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and sale of fruit-flavored beverages.

## III.    Defendant's Unlawful Conduct

### A.    Defendant's Breach of Contract

75.     Defendant is breaching the License Agreement by manufacturing, distributing, advertising, marketing, promoting, using, offering for sale, and/or selling the pouches and products shown in paragraphs 76-95 *infra* without a valid license from Plaintiff.

76.     Reproduced *infra* is an image of a product titled "Natures Nectar Fruit Punch":



77.     As shown *infra*, "████████████████████████████
████████████████████████████████████████████████████████
██████████

| | **New Unlicensed Product** |
|---|---|
| |  |

78.    Reproduced *infra* is an image of a product titled "ReFreshing! Fruit Punch":



| | **New Unlicensed Product** |
|---|---|
|  |  |

80.    Reproduced *infra* is an image of a product titled "Back to Nature 100% Juice Fruit Juice":



81.    As shown *infra*, ███████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████:

| | **New Unlicensed Product** |
|---|---|
| |  |

82.    Reproduced *infra* is an image of a product titled "OH-SO Organic Berry Pink Lemonade":



83.    As shown *infra*, ███████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████ :

| | **New Unlicensed Product** |
|---|---|
| |  |

84.    Reproduced *infra* is an image of a product titled "Wild Harvest Fruit Punch":



85.    As shown *infra*, "██████████████████████████████████

████████████████████████████████████████████████████████

██████████:

| | **New Unlicensed Product** |
|---|---|
|  | |

86.     Reproduced *infra* is an image of a product titled "Full Circle Strawberry Kiwi Flavored Juice Drink":



87.     As shown *infra*, ███████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████

| | **New Unlicensed Product** |
|---|---|
|  | |

88.    Reproduced *infra* is an image of a product titled "Green Beginnings Mango Tangerine Coconut Water":



89.    As shown *infra*, ███████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ :

| | **New Unlicensed Product** |
|---|---|
|  | |

90.    Reproduced *infra* is an image of a product titled "Sunny D Tangy Original":



91.    As shown *infra*, ███████████████████████████████
████████████████████████████████████████████████
█████████

| | **New Unlicensed Product** |
|---|---|
|  | |

92.     Reproduced *infra* is an image of a product titled "Organic Juicy Juice Splashers Fruit Punch":



93.     As shown *infra*, ███████████████████████████████████

████████████████████████████████████████████████████████████

████████████████:

| | **New Unlicensed Product** |
|---|---|
|  | |

94.    Reproduced *infra* is an image of a product titled "Organic Juicy Juice Splashers Tropical Twist":



95.    As shown *infra*, " ████████████████████████████████
████████████████████████████████████████████████
████████████████

| | **New Unlicensed Product** |
|---|---|
|  | |

96.    The fruit-flavored beverage products shown in paragraphs 76, 78, 80, 82, 84, 86, 88, 90, 92, and 94 *supra* are referred to hereinafter collectively as the "Fruit-Flavored Beverage Products."

97.    On information and belief, Defendant ABC manufactures, distributes, supplies, advertises, markets, promotes, offers for sale, and sells the Fruit-Flavored Beverage Products.

98.    On information and belief, Defendant ABC manufactures, distributes, supplies, advertises, markets, promotes, offers for sale, and sells the pouches that contain Defendant's Fruit-Flavored Beverage Products.

99.    As shown in paragraphs 77, 79, 81, 83, 85, 87, 88, 91, 93, and 95 *supra*, the pouches that contain Defendant's Fruit-Flavored Beverage Products are nearly identical to the pouches shown in Schedule B-024, Schedule B-044, Schedule B-004, Schedule B-031, Schedule-040, Schedule B-005, Schedule B-011, Schedule B-037, Schedule B-018, Schedule B-020,  respectively, to the License Agreement.

100.    The pouches shown in Schedule B-024, Schedule B-044, Schedule B-004, Schedule B-031, Schedule-040, Schedule B-005, Schedule B-011, Schedule B-037, Schedule B-

018, Schedule B-020, respectively, to the License Agreement are Licensed Products that use Plaintiff's CAPRI SUN Pouch Trademark.

101.    The pouches shown in paragraphs 76, 78, 80, 82, 84, 86, 88, 90, 92, and 94 *supra* are Licensed Products under the License Agreement.

102.    Defendant's Fruit-Flavored Beverage Products are Licensed Products under the License Agreement.

103.    Defendant ABC does not have a license from Plaintiff to use Plaintiff's CAPRI SUN Pouch Trademark for the pouches shown in paragraphs 76, 78, 80, 82, 84, 86, 88, 90, 92, and 94 *supra* or Defendant's Fruit-Flavored Beverage Products.

104.    On information and belief, neither the pouches shown in paragraphs 76, 78, 80, 82, 84, 86, 88, 90, 92, and 94 *supra* nor Defendant's Fruit-Flavored Beverage Products were in Defendant ABC's existing inventory as of the date the License Agreement expired.

105.    On information and belief, Defendant ABC started manufacturing, distributing, marketing, advertising, promoting, offering for sale, and/or selling the pouches shown in paragraphs 76, 78, 80, 82, 84, 86, 88, 90, 92, and 94 *supra* and Defendant's Fruit-Flavored Beverage Products after the License Agreement expired.

106.    On information and belief, ABC continues manufacturing, distributing, marketing, advertising, promoting, offering for sale, and/or selling the pouches shown in paragraphs 76, 78, 80, 82, 84, 86, 88, 90, 92, and 94 *supra* and Defendant's Fruit-Flavored Beverage Products after expiration of the License Agreement.

107.    Defendant ABC does not have Plaintiff's authorization, permission, or consent to use Plaintiff's CAPRI SUN Pouch Trademark for the pouches shown in paragraphs 76, 78, 80, 82, 84, 86, 88, 90, 92, and 94 *supra* or Defendant's Fruit-Flavored Beverage Products.

108.    On information and belief, ABC began manufacturing, distributing, marketing, advertising, promoting, offering for sale, and/or selling the pouches shown in paragraphs 76, 78, 80, 82, 84, 86, 88, 90, 92, and 94 *supra* and Defendant's Fruit-Flavored Beverage Products before the License Agreement expired.

109.    Defendant ABC never provided to Plaintiff written notice of Defendant ABC's intent to use or sell the pouches shown in paragraphs 76, 78, 80, 82, 84, 86, 88, 90, 92, and 94 *supra* or Defendant's Fruit-Flavored Beverage Products.

110.    Defendant ABC never provided to Plaintiff an image or sample of the pouches shown in paragraphs 76, 78, 80, 82, 84, 86, 88, 90, 92, and 94 *supra* or Defendant's Fruit-Flavored Beverage Products.

111.    On information and belief, the pouches shown in paragraphs 76, 78, 80, 82, 84, 86, 88, 90, 92, and 94 *supra* and Defendant's Fruit-Flavored Beverage Products were in Defendant ABC's existing inventory as of the date that the License Agreement expired.

112.    Defendant ABC's six-month grace period under the License Agreement to sell off existing inventory ended on January 26, 2019 (the "Sell-Off Period").

113.    On information and belief, Defendant ABC is manufacturing, distributing, marketing, promoting, advertising, offering to sell, and/or selling, and intends to continue manufacturing, distributing, marketing, promoting, advertising, offering to sell, and/or selling, the pouches shown in paragraphs 76, 78, 80, 82, 84, 86, 88, 90, 92, and 94 *supra* and Defendant's Fruit-Flavored Beverage Products, despite the termination of the License Agreement and the expiration of the Sell-Off Period.

114.    Plaintiff has not agreed, expressly or impliedly, to extend the Sell-Off Period.

115.    Defendant ABC does not have Plaintiff's authorization, permission, or consent to continue selling existing inventory after the expiration of the Sell-Off Period.

116.    Defendant ABC has not provided Plaintiff with the requisite reports of annual sales of Licensed Products for the 2017 and 2018 calendar years.

117.    Defendant ABC has not paid to Plaintiff any royalty payments on the sales of the Fruit-Flavored Beverage Products or any existing inventory sold during the Sell-Off Period.

B.  Defendant's Trademark Infringement

118.    Defendant's unlawful conduct does not end with its breach of the License Agreement.

119.    Reproduced *infra* is an image of a licensed fruit-flavored beverage offered under Plaintiff's CAPRI SUN Pouch Trademark:



120.    On information and belief, the pouches shown in paragraphs 76, 78, 80, 82, 84, 86, 88, 90, 92, and 94 *supra* are the same pouch (the "Defendant's Pouch").

121.    Reproduced *infra* is an image of a representative sample of Defendant's Pouch (inset left), and an image of a representative sample of Plaintiff's CAPRI SUN Pouch Trademark (inset right):

| **Defendant's Confusingly Similar Pouch** | **Plaintiff's CAPRI SUN Pouch Trademark** |
|---|---|
|  |  |
|  |  |



122.    As shown in the chart in paragraph 121 *supra*, Defendant's Pouch is confusingly similar to Plaintiff's CAPRI SUN Pouch Trademark ("Defendant's Confusingly Similar Pouch").

123.    For example, as shown in paragraph 121 *supra*, Defendant's Confusingly Similar Pouch is nearly identical in height and width to Plaintiff's CAPRI SUN Pouch Trademark.

124.    For example, as shown in paragraph 121 *supra*, just like Plaintiff's CAPRI SUN Pouch Trademark, Defendant's Confusingly Similar Pouch has a trapezoid shape.

125.    For example, as shown in paragraph 121 *supra*, just like Plaintiff's CAPRI SUN Pouch Trademark, Defendant's Confusingly Similar Pouch has straight sides.

126.    For example, as shown in paragraph 121 *supra*, just like Plaintiff's CAPRI SUN Pouch Trademark, Defendant's Confusingly Similar Pouch has the same characteristic "potbelly" at the below side.

127.    As shown in paragraph 121 *supra*, the only difference between Defendant's Confusingly Similar Pouch and Plaintiff's CAPRI SUN Pouch Trademark is the slightly rounded corner at the top of Defendant's Confusingly Similar Pouch.

128.    As shown in paragraph 121 *supra*, the slightly rounded corners at the top of Defendant's Confusingly Similar Pouch are immaterial and fail to distinguish Defendant's Confusingly Similar Pouch from Plaintiff's CAPRI SUN Pouch Trademark in the marketplace.

129.    Upon information and belief, consumers encounter fruit-flavored beverages offered under Plaintiff's CAPRI SUN Pouch Trademark, and under Defendant's Confusingly Similar Pouch, in the same trade channels, including, for example, at national retailers such as Walmart and Giant Eagle.

130.    Upon information, fruit-flavored beverages offered under Plaintiff's CAPRI SUN Pouch Trademark, and under Defendant's Confusingly Similar Pouch, appeal to the same customer base, including, for example, children, and those purchasing fruit-flavored beverages for children.

131.    Defendant acknowledged its obligations under the License Agreement in a July 27, 2018 letter to Plaintiff.

132.    Defendant was aware of Plaintiff's CAPRI SUN Pouch Trademark when Defendant adopted its Confusingly Similar Pouch and began using it in commerce (including, without limitation, on and for Defendant's Fruit-Flavored Beverage Products).

C.  Defendant's Trade-Dress Infringement

133.    Defendant's unlawful conduct does not end with its breach of the License of the Agreement or its use of the Confusingly Similar Pouch.

134.    Reproduced *infra* is an image of a licensed fruit-flavored beverage offered under Plaintiff's CAPRI SUN Pouch Trademark (inset left), and an image of the Organic Juicy Juice Splashers Beverage (inset right):



135.    On information and belief, Defendant ABC created the packaging trade dress that appears on the Organic Juicy Juice Splashers Beverage shown in paragraph 135 *supra*.

136.    As shown in paragraph 135 *supra*, the packaging trade dress that Defendant uses for its Organic Juicy Juice Splashers Beverage is confusingly similar to Plaintiff's CAPRI SUN Packaging Trade Dress ("Defendant's Confusingly Similar Juicy Juice Packaging Trade Dress").

137.    Defendant's Confusingly Similar Juicy Juice Packaging Trade Dress has the same overall configuration of design elements, and look and feel, as Plaintiff's CAPRI SUN Packaging Trade Dress.

138.    For example, just like Plaintiff's CAPRI SUN Packaging Trade Dress, Defendant's Confusingly Similar Juicy Juice Packaging Trade Dress consists of (i) color images of fruit that correspond with the flavored beverage in the packaging; (*e.g.*, cherries for the flavor Fruit Punch); (ii) directly beneath these color images of fruit, a literal spelling of the flavored beverage in the packaging (*e.g.*, "Fruit Punch"); and (iii) the literal spelling of the flavored beverage appearing in a color that corresponds with the flavored beverage in the packaging (*e.g.*, purple for the flavor Fruit Punch).

139.    Upon information and belief, consumers encounter fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress, and fruit-flavored beverages featuring Defendant's Confusingly Similar Juicy Juice Packaging Trade Dress, in the same trade channels, including, for example, at national retailers such as Walmart and Giant Eagle.

140.    Upon information and belief, fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress, and fruit-flavored beverages featuring Defendant's Confusingly Similar Juicy Juice Packaging Trade Dress, appeal to the same customer base, including, for example, children, and those purchasing fruit-flavored beverages for children.

## IV.    Plaintiff's Efforts to Settle This Matter

141.    As part of Plaintiff's regular policing of the marketplace for unauthorized uses of its CAPRI SUN Pouch Trademark and its CAPRI SUN Packaging Trade Dress, Plaintiff discovered Defendant's Confusingly Similar Pouch used on and for Defendant's Organic Juicy Juice Splashers Beverage in the Fall of 2018.

142.    Shortly thereafter, on October 8, 2018, Plaintiff sent a protest letter to Defendant ABC that (i) highlighted ABC's breaches of the License Agreement, and (ii) demanded samples of the Organic Juicy Juice Splashers Beverage (the "October 8th Letter").  Attached hereto as **Exhibit C** is a true and correct copy of the October 8th Letter.

143.    On October 31, 2018, Defendant ABC's outside counsel responded to the October 10th Letter, denying that the Organic Juicy Juice Splashers Beverage used Plaintiff's CAPRI SUN Pouch Trademark or any other mark that is confusingly similar thereto (the "October 31st Letter").  Attached hereto as **Exhibit D** is a true and correct copy of the October 31st Letter.

144.    On December 19, 2018, Plaintiff (via its undersigned counsel) responded to the October 31st Letter, explaining to Defendant ABC that, *inter alia*: (i) the Confusingly Similar

Pouch used for the Organic Juicy Juice Splashers Beverage is nearly identical to the pouches and beverages shown in Schedules B-018 and B-020, respectively, to the License Agreement; (ii) thereby rendering the Organic Juicy Juice Splashers Beverage a Licensed Product under the License Agreement; (iii) which means that the Organic Juicy Juice Splashers Beverage is using Plaintiff's CAPRI SUN Pouch Trademark (the "December 19th Letter").  Attached hereto as **Exhibit E** is a true and correct copy of the December 19th Letter.

145.    Plaintiff also demanded in the December 19th Letter that Defendant ABC confirm by January 26, 2019 that Defendant ABC would, *inter alia*, (i) cease its infringing conduct, and (ii) provide Plaintiff with an accounting.  *See* Exh. E at p. 4.

146.    Defendant ABC did not respond to Plaintiff's December 19th Letter.

147.    Plaintiff sent a still further protest letter to Defendant ABC on January 30, 2019, demanding that Defendant ABC confirm in writing by February 7, 2019 it would (i) cease its infringing conduct, and (ii) provide Plaintiff with an accounting (the "January 30th Letter"). Attached hereto as **Exhibit F** is a true and correct copy of the January 30th Letter.

148.    To date, Defendant ABC has not responded to Plaintiff's January 30th Letter.

149.    Upon information and belief, ABC has no intention of ceasing its unlawful conduct complained of herein.

150.    Accordingly, Plaintiff brings this lawsuit for legal and equitable relief under federal and New York law.

## CLAIMS FOR RELIEF

## COUNT I

*(Breach of Contract Under New York Law)*

151.    Capri Sun incorporates the allegations set forth in paragraphs 1 – 150 of the Complaint as though set forth fully herein.

152.    Count I is for breach of contract under New York law.

153.    Plaintiff and Faribault duly executed the License Agreement on July 1, 2016.

154.    Faribault duly assigned all of its rights and obligations under the License Agreement to Defendant ABC on or about October 26, 2017.

155.    Plaintiff duly complied with (and continues complying with), and performed (and continues performing), all of its obligations under the License Agreement.

156.    Defendant ABC's use and sale of the Confusingly Similar Pouch after the License Agreement terminated constitutes a material breach of ¶ 5.3.1 of the License Agreement.

157.    Defendant ABC's sale of the Fruit-Flavored Beverage Products after the License Agreement terminated constitutes a material breach of ¶ 5.3.1 of the License Agreement.

158.    Defendant ABC's use and sale of the Confusingly Similar Pouch after the License Agreement terminated constitutes a material breach of ¶ 5.3.2 of the License Agreement.

159.    Defendant ABC's sale of the Fruit-Flavored Beverage Products after the License Agreement terminated constitutes a material breach of ¶ 5.3.2 of the License Agreement.

160.    Defendant ABC's failure to provide Plaintiff with prior, written notice of Defendant's intent to use and/or sell the Confusingly Similar Pouch constitutes a material breach of ¶ 3.3 of the License Agreement.

161.    Defendant ABC's failure to provide Plaintiff with prior, written notice of Defendant's intent to sell the Fruit-Flavored Beverage Products constitutes a material breach of ¶ 3.3 of the License Agreement.

162.    Plaintiff has suffered, and will continue to suffer, damages directly and proximately caused by Defendant's material breaches of the License Agreement as alleged herein.

163.    On information and belief, Defendant ABC has not cured, and does not intend to cure, its material breaches of the License Agreement, as alleged herein.

164.    On information and belief, Defendant's conduct alleged herein constitutes a breach of contract under New York law.

## COUNT II

*(Federal Trademark Infringement Under 15 U.S.C. § 1114)*

165.    Capri Sun incorporates the allegations set forth in paragraphs 1 – 164 of the Complaint as though set forth fully herein.

166.    Count II is for federal trademark infringement under 15 U.S.C. § 1114.

167.    Capri Sun exclusively owns all rights, title, and interest in and to the CAPRI SUN Pouch Trademark (including, without limitation, the incontestable '517 Registration).

168.    Capri Sun's rights in and to the CAPRI SUN Pouch Trademark predate any rights that Defendant could claim in and to the Confusingly Similar Pouch.

169.    The CAPRI SUN Pouch Trademark is inherently distinctive.

170.    The CAPRI SUN Pouch Trademark has acquired distinctiveness.

171.    Defendant's Confusingly Similar Pouch is a reproduction, copy, and/or colorable imitation of the Capri Sun Pouch Trademark within the meaning of 15 U.S.C. § 1114(1)(a).

172.    Defendant's use of the Confusingly Similar Pouch in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of fruit-flavored beverages (including, for example, Defendant's Fruit-Flavored Beverage Products) is likely to cause confusion, cause mistake, and/or cause deception about the source, origin, sponsorship, approval, endorsement, affiliation, association, and/or quality of fruit-flavored beverages offered under Defendant's Confusingly Similar Pouch.

173.    Defendant's use of the Confusingly Similar Pouch in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of fruit-flavored beverages (including, for example, Defendant's Fruit-Flavored Beverage Products) is likely to cause confusion, cause mistake, and/or cause deception about the source, origin, sponsorship, approval, endorsement, affiliation, association, and/or quality of fruit-flavored beverages offered under Plaintiff's CAPRI SUN Pouch Trademark.

174.    Upon information and belief, Defendant copied, adopted, and/or uses the Confusingly Similar Pouch in interstate commerce in furtherance of Defendant's willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of fruit-flavored beverages offered under Plaintiff's CAPRI SUN Pouch Trademark.

175.    Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from its use of the Confusingly Similar Pouch in interstate commerce, to which Defendant is not entitled at law or in equity.

176.    Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark infringement in violation of 15 U.S.C. § 1114(a).

177.    Capri Sun has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

178.    Capri Sun has no adequate remedy at law.

## COUNT III

(*Federal Unfair Competition, False Association Under 15 U.S.C. § 1125(a)*)

179.    Capri Sun incorporates the allegations set forth in paragraphs 1 – 178 of the Complaint as though set forth fully herein.

180.    Count III is for federal unfair competition and federal false association in violation of 15 U.S.C. § 1125(a).

181.    Capri Sun exclusively owns all rights, title, and interest in and to the CAPRI SUN Pouch Trademark.

182.    Capri Sun's rights in and to the CAPRI SUN Pouch Trademark predate any rights that Defendant could claim in and to the Confusingly Similar Pouch.

183.    The CAPRI SUN Pouch Trademark is inherently distinctive.

184.    The CAPRI SUN Pouch Trademark has acquired distinctiveness.

185.    Defendant's Confusingly Similar Pouch constitutes a symbol or device within the meaning of 15 U.S.C. § 1125(a).

186.    Defendant's use of the Confusingly Similar Pouch in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of fruit-flavored beverages (including, for example, Defendant's Fruit-Flavored Beverage Products) is likely to cause confusion, cause mistake, and/or deceive

36

consumers into mistakenly believing that Defendant is Capri Sun, and/or that Defendant is a licensee, authorized distributor, and/or affiliate of Capri Sun and/or fruit-flavored beverages offered under Plaintiff's CAPRI SUN Pouch Trademark.

187.    Defendant's use of the Confusingly Similar Pouch in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of fruit-flavored beverages (including, for example, Defendant's Fruit-Flavored Beverage Products) is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Defendant and/or fruit-flavored beverages offered under Defendant's Confusingly Similar Pouch are affiliated, connected, and/or associated with Capri Sun and/or fruit-flavored beverages offered under Plaintiff's CAPRI SUN Pouch Trademark.

188.    Defendant's use of the Confusingly Similar Pouch in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of fruit-flavored beverages (including, for example, Defendant's Fruit-Flavored Beverage Products) is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that fruit-flavored beverages offered under Defendant's Confusingly Similar Pouch originate with, and/or are sponsored or approved by, Plaintiff or vice versa.

189.    Upon information and belief, Defendant copied, adopted, and/or uses the Confusingly Similar Pouch in furtherance of Defendant's willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of fruit-flavored beverages offered under Plaintiff's CAPRI SUN Pouch Trademark.

190.    Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from its use of the Confusingly Similar Pouch in interstate commerce, to which Defendant is not entitled at law or in equity.

191.    Upon information and belief, Defendant's acts and conduct complained of herein constitute unfair competition and/or false association in violation of 15 U.S.C. § 1125(a).

192.    Capri Sun has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

193.    Capri Sun has no adequate remedy at law.

## COUNT IV

*(Federal Trademark Dilution Under 15 U.S.C. § 1125(c))*

194.    Capri Sun incorporates the allegations set forth in paragraphs 1 – 193 of the Complaint as though set forth fully herein.

195.    Count IV is for federal trademark dilution under 15 U.S.C. § 1125(c).

196.    Capri Sun owns all rights, title, and interest in and to the CAPRI SUN Pouch Trademark (including, without limitation, the incontestable '517 Registration).

197.    Capri Sun's rights in and to the CAPRI SUN Pouch Trademark predate any rights that Defendant could claim in and to Defendant's Confusingly Similar Pouch.

198.    The CAPRI SUN Pouch Trademark is inherently distinctive.

199.    The CAPRI SUN Pouch Trademark has acquired distinctiveness.

200.    The CAPRI SUN Pouch Trademark is famous among the general consuming public for fruit-flavored beverages.

201.    The CAPRI SUN Pouch Trademark was famous when Defendant began using the Confusingly Similar Pouch in interstate commerce on, for, and/or in connection with the

manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of fruit-flavored beverages (including, for example, Defendant's Fruit-Flavored Beverage Products).

202.    Defendant's use of the Confusingly Similar Pouch in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of fruit-flavored beverages (including, for example, Defendant's Fruit-Flavored Beverage Products) is likely to dilute the distinctive quality of Plaintiff's CAPRI SUN Pouch Trademark such that Plaintiff's CAPRI SUN Pouch Trademark's established selling power and value, as well as its ability to exclusively identify Capri Sun's line of fruit-flavored beverages, will be whittled away.

203.    Upon information and belief, Defendant copied, adopted, and/or uses the Confusingly Similar Pouch in furtherance of Defendant's willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of fruit-flavored beverages offered under the CAPRI SUN Pouch Trademark.

204.    Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from its use of the Confusingly Similar Pouch, to which Defendant is not entitled at law or in equity.

205.    Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark dilution in violation of 15 U.S.C. § 1125(C).

206.    Capri Sun has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

207.    Capri Sun has no adequate remedy at law.

## COUNT V

*(Federal Trade-Dress Infringement Under 15 U.S.C. § 1125(a))*

208.    Capri Sun incorporates the allegations set forth in paragraphs 1 – 207 of the Complaint as though set forth fully herein.

209.    Count V is for federal trade-dress infringement under 15 U.S.C. § 1125(a).

210.    Capri Sun exclusively owns all rights, title, and interest in and to the CAPRI SUN Packaging Trade Dress.

211.    Capri Sun's rights in and to the CAPRI SUN Packaging Trade Dress predate any rights that Defendant could claim in and to Defendant's Confusingly Similar Juicy Juice Packaging Trade Dress.

212.    The CAPRI SUN Packaging Trade Dress is inherently distinctive. The CAPRI SUN Packaging Trade Dress has acquired distinctiveness.

213.    The CAPRI SUN Packaging Trade Dress is non-functional.

214.    Defendant's Confusingly Similar Juicy Juice Packaging Trade Dress constitutes a "symbol" or "device" within the meaning of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

215.    Defendant's use of the Confusingly Similar Juicy Juice Packaging Trade Dress in interstate commerce on, for, and/or in connection with the advertising, marketing, promotion, distribution, offering for sale, and/or sale of fruit-flavored beverages (including, for example, the Organic Juicy Juice Splashers Beverage) is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Defendant is Capri Sun, and/or that Defendant is a licensee, authorized distributor, and/or affiliate of Capri Sun and/or fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress.

216.    Defendant's use of the Confusingly Similar Juicy Juice Packaging Trade Dress in interstate commerce on, for, and/or in connection with the advertising, marketing, promotion, distribution, offering for sale, and/or sale of fruit-flavored beverages (including, for example, the Organic Juicy Juice Splashers Beverage) is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Defendant is Capri Sun, and/or that Defendant is a licensee, authorized distributor, and/or affiliate of Capri Sun and/or fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress.

217.    Defendant's use of the Confusingly Similar Juicy Juice Packaging Trade Dress in interstate commerce on, for, and/or in connection with the advertising, marketing, promotion, distribution, offering for sale, and/or sale of fruit-flavored beverages (including, for example, the Organic Juicy Juice Splashers Beverage) is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Defendant and/or flavored-beverage products featuring Defendant's Confusingly Similar Juicy Juice Packaging Trade Dress is/are affiliated, connected, and/or associated with Capri Sun and/or fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress.

218.    Defendant's use of the Confusingly Similar Juicy Juice Packaging Trade Dress in interstate commerce on, for, and/or in connection with the advertising, marketing, promotion, distribution, offering for sale, and/or sale of fruit-flavored beverages (including, for example, the Organic Juicy Juice Splashers Beverage) is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that fruit-flavored beverages featuring the Confusingly Similar Juicy Juice Packaging Trade Dress originate with, and/or are sponsored or approved by, Capri Sun or vice versa.

219.    Upon information and belief, Defendant copied, adopted, and/or uses the Confusingly Similar Juicy Juice Packaging Trade Dress for fruit-flavored beverages in furtherance of Defendant's willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress.

220.    Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from the sale of fruit-flavored beverages featuring the Confusingly Similar Juicy Juice Packaging Trade Dress, to which Defendant is not entitled at law or in equity.

221.    Upon information and belief, Defendant's acts and conduct complained of herein constitute federal trade-dress infringement in violation of 15 U.S.C. § 1125(a).

222.    Capri Sun has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

223.    Capri Sun has no adequate remedy at law.

## COUNT VI

*(Federal Unfair Competition, False Association Under 15 U.S.C. § 1125(a))*

224.    Capri Sun incorporates the allegations set forth in paragraphs 1 – 223 of the Complaint as though set forth fully herein.

225.    Count VI is for federal unfair competition and federal false association in violation of 15 U.S.C. § 1125(a).

226.    Capri Sun exclusively owns all rights, title, and interest in and to the CAPRI SUN Packaging Trade Dress.

227.    Capri Sun's rights in and to the CAPRI SUN Packaging Trade Dress predate any rights that Defendant could claim in and to Defendant's Confusingly Similar Juicy Juice Packaging Trade Dress.

228.    The CAPRI SUN Packaging Trade Dress is inherently distinctive.

229.    The CAPRI SUN Packaging Trade Dress has acquired distinctiveness.

230.    The CAPRI SUN Packaging Trade Dress is non-functional.

231.    Defendant's Confusingly Similar Juicy Juice Packaging Trade Dress constitutes a "symbol" or "device" within the meaning of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

232.    Defendant's use of the Confusingly Similar Juicy Juice Packaging Trade Dress in interstate commerce on, for, and/or in connection with the advertising, marketing, promotion, distribution, offering for sale, and/or sale of fruit-flavored beverages (including, for example, the Organic Juicy Juice Splashers Beverage) is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Defendant is Capri Sun, and/or that Defendant is a licensee, authorized distributor, and/or affiliate of Capri Sun and/or fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress.

233.    Defendant's use of the Confusingly Similar Juicy Juice Packaging Trade Dress in interstate commerce on, for, and/or in connection with the advertising, marketing, promotion, distribution, offering for sale, and/or sale of fruit-flavored beverages (including, for example, the Organic Juicy Juice Splashers Beverage) is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Defendant and/or flavored-beverage products featuring Defendant's Confusingly Similar Juicy Juice Packaging Trade Dress is/are affiliated,

connected, and/or associated with Capri Sun and/or fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress.

234.    Defendant's use of the Confusingly Similar Juicy Juice Packaging Trade Dress in interstate commerce on, for, and/or in connection with the advertising, marketing, promotion, distribution, offering for sale, and/or sale of fruit-flavored beverages (including, for example, the Organic Juicy Juice Splashers Beverage) is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that fruit-flavored beverages featuring the Confusingly Similar Juicy Juice Packaging Trade Dress originate with, and/or are sponsored or approved by, Capri Sun or vice versa.

235.    Upon information and belief, Defendant copied, adopted, and/or uses the Confusingly Similar Juicy Juice Packaging Trade Dress for fruit-flavored beverages in furtherance of Defendant's willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress.

236.    Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from the sale of fruit-flavored beverages featuring the Confusingly Similar Juicy Juice Packaging Trade Dress, to which Defendant is not entitled at law or in equity.

237.    Upon information and belief, Defendant's acts and conduct complained of herein constitute federal unfair competition and/or false association in violation of 15 U.S.C. § 1125(a).

238.    Capri Sun has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

239.    Capri Sun has no adequate remedy at law.

## COUNT VII

(*Trademark Infringement Under New York Common Law*)

240.    Capri Sun incorporates the allegations set forth in paragraphs 1 – 239 of the Complaint as though set forth fully herein.

241.    Count VII is for trademark infringement under New York common law.

242.    Capri Sun exclusively owns all rights, title, and interest in and to the CAPRI SUN Pouch Trademark.

243.    Capri Sun's rights in and to the CAPRI SUN Pouch Trademark predate any rights that Defendant could claim in and to Defendant's Confusingly Similar Pouch.

244.    The CAPRI SUN Pouch Trademark is inherently distinctive.

245.    The CAPRI SUN Pouch Trademark has acquired distinctiveness.

246.    Defendant's use of the Confusingly Similar Pouch in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of fruit-flavored beverages (including, for example, Defendant's Fruit-Flavored Beverage Products) is likely to cause confusion, cause mistake, and/or cause deception about the source, origin, sponsorship, approval, endorsement, affiliation, association, and/or quality of fruit-flavored beverages offered under Defendant's Confusingly Similar Pouch.

247.    Defendant's use of the Confusingly Similar Pouch in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of fruit-flavored beverages (including, for example, Defendant's Fruit-Flavored Beverage Products) is likely to cause confusion, cause mistake, and/or cause deception about the source, origin, sponsorship, approval, endorsement, affiliation, association,

and/or quality of fruit-flavored beverages offered under Plaintiff's CAPRI SUN Pouch Trademark.

248.    Upon information and belief, Defendant copied, adopted, and/or uses the Confusingly Similar Pouch in interstate commerce in furtherance of Defendant's willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of fruit-flavored beverages offered under Plaintiff's CAPRI SUN Pouch Trademark Pouch Trademark.

249.    Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from its use of the Confusingly Similar Pouch in interstate commerce, to which Defendant is not entitled at law or in equity.

250.    Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark infringement in violation of New York common law.

251.    Capri Sun has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

252.    Capri Sun has no adequate remedy at law.

## COUNT VIII

(*Trade-Dress Infringement Under New York Common Law*)

253.    Capri Sun incorporates the allegations set forth in paragraphs 1 – 252 of the Complaint as though set forth fully herein.

254.    Count VIII is for trade-dress infringement under New York common law.

255.    Capri Sun exclusively owns all rights, title, and interest in and to the CAPRI SUN Packaging Trade Dress.

256.    Capri Sun's rights in and to the CAPRI SUN Packaging Trade Dress predate any rights that Defendant could claim in and to Defendant's Confusingly Similar Juicy Juice Packaging Trade Dress.

257.    The CAPRI SUN Packaging Trade Dress is inherently distinctive.

258.    The CAPRI SUN Packaging Trade Dress has acquired distinctiveness.

259.    The CAPRI SUN Packaging Trade Dress is non-functional.

260.    Defendant's use of the Confusingly Similar Juicy Juice Packaging Trade Dress in interstate commerce on, for, and/or in connection with the advertising, marketing, promotion, distribution, offering for sale, and/or sale of fruit-flavored beverages (including, for example, the Organic Juicy Juice Splashers Beverage) is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Defendant is Capri Sun, and/or that Defendant is a licensee, authorized distributor, and/or affiliate of Capri Sun and/or fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress.

261.    Defendant's use of the Confusingly Similar Juicy Juice Packaging Trade Dress in interstate commerce on, for, and/or in connection with the advertising, marketing, promotion, distribution, offering for sale, and/or sale of fruit-flavored beverages (including, for example, the Organic Juicy Juice Splashers Beverage) is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Defendant and/or flavored-beverage products featuring Defendant's Confusingly Similar Juicy Juice Packaging Trade Dress is/are affiliated, connected, and/or associated with Capri Sun and/or fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress.

262.    Defendant's use of the Confusingly Similar Juicy Juice Packaging Trade Dress in interstate commerce on, for, and/or in connection with the advertising, marketing, promotion, distribution, offering for sale, and/or sale of fruit-flavored beverages (including, for example, the Organic Juicy Juice Splashers Beverage) is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that fruit-flavored beverages featuring the Confusingly Similar Juicy Juice Packaging Trade Dress originate with, and/or are sponsored or approved by, Capri Sun or vice versa.

263.    Upon information and belief, Defendant copied, adopted, and/or uses the Confusingly Similar Juicy Juice Packaging Trade Dress for fruit-flavored beverages in furtherance of Defendant's willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress.

264.    Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from the sale of fruit-flavored beverages featuring the Confusingly Similar Juicy Juice Packaging Trade Dress, to which Defendant is not entitled at law or in equity.

265.    Upon information and belief, Defendant's acts and conduct complained of herein constitute trade-dress infringement in violation of New York common law.

266.    Capri Sun has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

267.    Capri Sun has no adequate remedy at law.

## COUNT IX

(*Unfair Competition Under New York Common Law*)

268.    Capri Sun incorporates the allegations set forth in paragraphs 1 – 267 of the Complaint as though set forth fully herein.

269.    Count IX is for unfair competition under New York common law.

270.    Capri Sun exclusively owns all rights, title, and interest in and to the CAPRI SUN Pouch Trademark.

271.    Capri Sun's rights in and to the CAPRI SUN Pouch Trademark predate any rights that Defendant could claim in and to the Confusingly Similar Pouch.

272.    The CAPRI SUN Pouch Trademark is inherently distinctive.

273.    The CAPRI SUN Pouch Trademark has acquired distinctiveness.

274.    Defendant's use of the Confusingly Similar Pouch in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of fruit-flavored beverages (including, for example, Defendant's Fruit-Flavored Beverage Products) is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Defendant is Capri Sun, and/or that Defendant is a licensee, authorized distributor, and/or affiliates of Capri Sun and/or fruit-flavored beverages offered under Plaintiff's CAPRI SUN Pouch Trademark.

275.    Defendant's use of the Confusingly Similar Pouch in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of fruit-flavored beverages (including, for example, Defendant's Fruit-Flavored Beverage Products) is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Defendant and/or fruit-flavored beverages offered

under Defendant's Confusingly Similar Pouch are affiliated, connected, and/or associated with Capri Sun and/or fruit-flavored beverages offered under Plaintiff's CAPRI SUN Pouch Trademark.

276.    Defendant's use of the Confusingly Similar Pouch in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of fruit-flavored beverages (including, for example, Defendant's Fruit-Flavored Beverage Products) is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that fruit-flavored beverages offered under Defendant's Confusingly Similar Pouch originate with, and/or are sponsored or approved by, Plaintiff Capri Sun or vice versa.

277.    Upon information and belief, Defendant copied, adopted, and/or uses the Confusingly Similar Pouch in furtherance of Defendant's willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of fruit-flavored beverages offered under Plaintiff's CAPRI SUN Pouch Trademark.

278.    Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from its use of the Confusingly Similar Pouch in interstate commerce, to which Defendant is not entitled at law or in equity.

279.    Upon information and belief, Defendant's acts and conduct complained of herein constitute unfair competition in violation of New York common law.

280.    Capri Sun has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

281.    Capri Sun has no adequate remedy at law.

## COUNT X

(*Unfair Competition Under New York Common Law*)

282.    Capri Sun incorporates the allegations set forth in paragraphs 1 – 281 of the Complaint as though set forth fully herein.

283.    Count X is for unfair competition under New York common law.

284.    Capri Sun exclusively owns all rights, title, and interest in and to the CAPRI SUN Packaging Trade Dress.

285.    Capri Sun's rights in and to the CAPRI SUN Packaging Trade Dress predate any rights that Defendant could claim in and to Defendant's Confusingly Similar Juicy Juice Packaging Trade Dress.

286.    The CAPRI SUN Packaging Trade Dress is inherently distinctive.

287.    The CAPRI SUN Packaging Trade Dress has acquired distinctiveness.

288.    The CAPRI SUN Packaging Trade Dress is non-functional.

289.    Defendant's use of the Confusingly Similar Juicy Juice Packaging Trade Dress in interstate commerce on, for, and/or in connection with the advertising, marketing, promotion, distribution, offering for sale, and/or sale of fruit-flavored beverages (including, for example, the Organic Juicy Juice Splashers Beverage) is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Defendant is Capri Sun, and/or that Defendant is a licensee, authorized distributor, and/or affiliate of Capri Sun and/or fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress.

290.    Defendant's use of the Confusingly Similar Juicy Juice Packaging Trade Dress in interstate commerce on, for, and/or in connection with the advertising, marketing, promotion, distribution, offering for sale, and/or sale of fruit-flavored beverages (including, for example, the

Organic Juicy Juice Splashers Beverage) is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Defendant and/or flavored-beverage products featuring Defendant's Confusingly Similar Juicy Juice Packaging Trade Dress is/are affiliated, connected, and/or associated with Capri Sun and/or fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress.

291.    Defendant's use of the Confusingly Similar Juicy Juice Packaging Trade Dress in interstate commerce on, for, and/or in connection with the advertising, marketing, promotion, distribution, offering for sale, and/or sale of fruit-flavored beverages (including, for example, the Organic Juicy Juice Splashers Beverage) is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that fruit-flavored beverages featuring the Confusingly Similar Juicy Juice Packaging Trade Dress originate with, and/or are sponsored or approved by, Capri Sun or vice versa.

292.    Upon information and belief, Defendant copied, adopted, and/or uses the Confusingly Similar Juicy Juice Packaging Trade Dress for fruit-flavored beverages in furtherance of Defendant's willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress.

293.    Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from the sale of fruit-flavored beverages featuring the Confusingly Similar Juicy Juice Packaging Trade Dress, to which Defendant is not entitled at law or in equity.

294.    Upon information and belief, Defendant's acts and conduct complained of herein constitute unfair competition in violation of New York common law.

295.    Capri Sun has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

296.    Capri Sun has no adequate remedy at law.

## COUNT XI

(*Dilution Under NEW YORK GENERAL BUSINESS LAW § 360-l*)

297.    Capri Sun incorporates the allegations set forth in paragraphs 1 – 296 of the Complaint as though set forth fully herein.

298.    Count XI is for trademark dilution under NEW YORK GENERAL BUSINESS LAW § 360-l.

299.    Capri Sun owns all rights, title, and interest in and to the CAPRI SUN Pouch Trademark.

300.    Capri Sun's rights in and to the CAPRI SUN Pouch Trademark predate any rights that Defendant could claim in and to Defendant's Confusingly Similar Pouch.

301.    The CAPRI SUN Pouch Trademark is inherently distinctive.

302.    The CAPRI SUN Pouch Trademark has acquired distinctiveness.

303.    Defendant's use of the Confusingly Similar Pouch in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of fruit-flavored beverages (including, for example, Defendant's Fruit-Flavored Beverage Products) is likely to dilute the distinctive quality of Plaintiff's CAPRI SUN Pouch Trademark such that Plaintiff's CAPRI SUN Pouch Trademark established selling power and value, as well as its ability to exclusively identify Capri Sun's line of fruit-flavored beverages, will be whittled away.

304.    Upon information and belief, Defendant copied, adopted, and/or uses the Confusingly Similar Pouch in furtherance of Defendant's willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of fruit-flavored beverages offered under Plaintiff's CAPRI SUN Pouch Trademark.

305.    Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from its use of the Confusingly Similar Pouch, to which Defendant is not entitled at law or in equity.

306.    Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark dilution in violation of N.Y. GBL§ 360-*l*.

307.    Capri Sun has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

308.    Capri Sun has no adequate remedy at law.

## COUNT XII

(*Dilution Under NEW YORK GENERAL BUSINESS LAW § 360-l*)

309.    Capri Sun incorporates the allegations set forth in paragraphs 1 – 308 of the Complaint as though set forth fully herein.

310.    Count XII is for dilution under NEW YORK GENERAL BUSINESS LAW § 360-*l*.

311.    Capri Sun owns all rights, title, and interest in and to the CAPRI SUN Packaging Trade Dress.

312.    Capri Sun's rights in and to the CAPRI SUN Packaging Trade Dress predate any rights that Defendant could claim in and to Defendant's Confusingly Similar Juicy Juice Packaging Trade Dress.

313.    The CAPRI SUN Packaging Trade Dress is inherently distinctive.

314.  The CAPRI SUN Packaging Trade Dress has acquired distinctiveness.

315.  Defendant's use of the Confusingly Similar Juicy Juice Packaging Trade Dress in interstate commerce on, for, and/or in connection with the advertising, marketing, promotion, distribution, offering for sale and/or sale of fruit-flavored beverages (including, for example, the Organic Juicy Juice Splashers Beverage) is likely to dilute the distinctive quality of Plaintiff's CAPRI SUN Packaging Trade Dress such that Plaintiff's CAPRI SUN Packaging Trade Dress' established selling power and value, as well as its ability to exclusively identify Capri Sun's line of fruit-flavored beverages, will be whittled away.

316.  Upon information and belief, Defendant copied, adopted, and/or uses the Confusingly Similar Juicy Juice Packaging Trade Dress for fruit-flavored beverages in furtherance of Defendant's willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of fruit-flavored beverages featuring Plaintiff's CAPRI SUN Packaging Trade Dress.

317.  Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from the sale of fruit-flavored beverages featuring the Confusingly Similar Juicy Juice Packaging Trade Dress, to which Defendant is not entitled at law or in equity.

318.  Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark dilution in violation of N.Y. GBL§ 360-*l*.

319.  Capri Sun has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

320.  Capri Sun has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing, Plaintiff prays for judgment against Defendant as follows:

A.      A Declaration that Defendant, by its acts complained of herein, has breached the License Agreement;

B.      A Declaration that Defendant, by its acts complained of herein, has infringed, diluted, violated, and/or otherwise damaged or injured Plaintiff's CAPRI SUN Pouch Trademark and CAPRI SUN Packaging Trade Dress;

C.      An Order permanently enjoining and restraining Defendant, its parents, subsidiaries, divisions, branches, affiliates, predecessors or successors-in-interest, as well as any persons or entities acting or purporting to act for or on behalf of any of the foregoing, including any agents, employees, representatives, officers, directors, shareholders, servants, and partners, and those persons in active concert or participation with them, from using Plaintiff's CAPRI SUN Pouch Trademark and Plaintiff's CAPRI SUN Packaging Trade Dress (and/or any other name, word, term, symbol, device, logo, or combination of the foregoing that is confusingly similar to, infringes, or is dilutive of, Plaintiff's CAPRI SUN Pouch Trademark and/or Plaintiff's CAPRI SUN Packaging Trade Dress, including, without limitation, Defendant's Confusingly Similar Pouch, and Defendant's Confusingly Similar Juice Juicy Packaging Trade Dress) for any purpose;

D.      An Order directing Defendant to remove Plaintiff's CAPRI SUN Pouch Trademark and Plaintiff's CAPRI SUN Packaging Trade Dress (and any colorable imitation(s) thereof) from all web sites, advertisements, and promotional materials, whether electronic, printed or otherwise, under Defendant's direct or indirect dominion or control;

E.      An Order, pursuant to 15 U.S.C. § 1118, directing the seizure, delivery, and destruction of each item within Defendant's possession, custody, or control that infringes, dilutes, or violates Plaintiff's CAPRI SUN Pouch Trademark and/or Plaintiff's CAPRI SUN Packaging Trade Dress;

F.      An Order requiring Defendant to account for and pay over to Plaintiff: (i) all profits derived by Defendants from its acts complained of herein, and (ii) all damages directly and/or proximately sustained by Plaintiff as a result of Defendant's acts complained of herein, in amounts to be determined at trial;

G.      A Declaration that this case is "exceptional" within the meaning of 15 U.S.C. § 1117, and awarding Plaintiff its reasonable costs and attorneys' fees based thereon;

H.      An Order awarding Plaintiff treble damages, punitive damages, and treble profits;

I.      An Order awarding Plaintiff pre and post-judgment interest; and

J.      An Order awarding Plaintiff any further relief that this Court deems just and equitable.

## **JURY DEMAND**

Plaintiff requests a trial by jury for all issues so triable pursuant to FED. R. CIV. P. 38(b) and 38(c).

Dated: February 14th, 2019
     New York, New York

Respectfully submitted,

MAYER BROWN LLP

A. John P. Mancini
Allison Stillman
Jonathan W. Thomas
1221 Avenue of the Americas
New York, New York 10020-1001
Tel.: (212) 506 2500
Fax: (212) 262 1910
Email: JMancini@mayerbrown.com
Email: AStillman@mayerbrown.com
Email: JWThomas@mayerbrown.com

*Attorneys for Plaintiff*
*Capri Sun GmbH*