

Mayer Brown LLP
1221 Avenue of the
Americas
New York, NY 10020-1001
United States of America

T: +1 212 506 2500
F: +1 212 262 1910
www.mayerbrown.com

**A. John P. Mancini**
T: +1 212 506 2295
F: +1 212 849 5895
jmancini@mayerbrown.com

June 26, 2019

**Via ECF**

The Honorable Paul A. Engelmayer
United States District Judge, S.D.N.Y.
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 1305
New York, New York 10007

      Re: *Capri Sun GmbH v. American Beverage Corporation*; 1:19-cv-01422 (PAE)
          Request for Determination About Defense of Trademark Functionality

Dear Judge Engelmayer:

      We represent Plaintiff Capri Sun GmbH ("Capri Sun") in the above-referenced civil action. Further to the April 24, 2019 Initial Pretrial Conference in this action, we write jointly with Defendant American Beverage Corporation's ("ABC") counsel to seek a determination from the Court about whether ABC may assert trademark functionality as a defense in this case, in light of a "no-challenge" provision in a settlement agreement emanating from a prior litigation with ABC's predecessor-in-interest. As noted at the Initial Pretrial Conference, the resolution of this issue could significantly impact the issues in dispute in this litigation, particularly impacting what discovery is necessary. Pursuant to the Court's June 21, 2019 Order (Dkt. 28), the parties: (i) set forth herein a summary of the relevant factual background; (ii) attach hereto as an <u>Exhibit</u> a detailed Statement of Undisputed Facts; (iii) set forth herein the questions presented by ABC's asserted defense of trademark functionality; and (iv) set forth herein a two-page summary of each party's analysis of the relevant case law. Pursuant to Rule 3.I of this Court's Individual Practice Rules, the parties respectfully request a conference to establish a briefing schedule and further proceedings in connection with the determination of this threshold issue.[1]

---

[1] To the extent that the Court deems briefing on this issue to be appropriate, the parties respectfully request that the Court adopt the following briefing schedule and page limits: (i) simultaneous opening briefs of no more than 20 pages submitted on July 8, 2019, and (ii) simultaneous reply briefs of no more than 10 pages submitted on July 15, 2019.

The Honorable Paul A. Engelmayer
June 26, 2019
Page 2

**A. Factual Background**

Capri Sun owns incontestable U.S. Trademark Registration No. 1,418,517 (the "'517 Registration"), which covers the pouch-design trademark in Class 32 for "fruit juice drinks containing water":



(the "Pouch Trademark")

On July 24, 2015, Capri Sun (formerly known as SiSi-Werke Betriebs GmbH ("Capri Sun"[2])) commenced a lawsuit in the United States District Court for the District of Minnesota against Faribault Foods, Inc. ("Faribault"), styled *Deutsche SiSi-Werke Betriebs GmbH v. Faribault Foods, Inc.*, Case No. 0:15-cv-03138 (the "Minnesota Action"). On December 8, 2015, the Minnesota Action was transferred to the United States District Court for the Southern District of New York, case caption: *Deutsche SiSi-Werke Betriebs GmbH v. Faribault Foods, Inc.*, Case No. 1:15-cv-09750 (S.D.N.Y.) (the "Prior S.D.N.Y. Lawsuit").

In both the Minnesota Action and the Prior S.D.N.Y. Lawsuit, Capri Sun alleged that Faribault was infringing Capri Sun's rights in and to the Pouch Trademark. In the Prior S.D.N.Y. Lawsuit, Faribault challenged the validity of the Pouch Trademark on the ground that it was allegedly functional in: (i) its Second and Third Affirmative Defenses, and (ii) each of its three Counterclaims. In the Prior S.D.N.Y. Lawsuit, Faribault also sought discovery on the issue of whether the Pouch Trademark was allegedly functional in its: (i) first set of document requests; (ii) third set of document requests; (iii) first set of requests for admission; and (iv) Rule 30(b)(6) deposition. Prior to settlement (*see discussion infra*), Capri Sun responded to certain of Faribault's requests for initial admissions requests, but no documents were produced, no depositions were taken, and no interrogatory requests were exchanged.

On June 3, 2016, Capri Sun and Faribault's representatives duly executed a Settlement Term Sheet to resolve the Prior S.D.N.Y. Lawsuit (the "Term Sheet"). In the Term Sheet, Faribault acknowledged the validity of the Pouch Trademark, and agreed not to challenge or contest the Trademark's validity either directly or indirectly. In the Term Sheet, Capri Sun and Faribault agreed to dismiss their claims and counterclaims in the Prior S.D.N.Y. Lawsuit with prejudice. On July 1, 2016, Capri Sun and Faribault duly executed a Settlement and License Agreement (the "Agreement") that memorialized the agreements contained in the Term Sheet and resolved the

---

[2] On December 17, 2018, Capri Sun recorded its change of name from SiSi-Werke Betriebs GmbH ("SiSi") to Capri Sun GmbH ("Capri Sun") with the U.S. Patent and Trademark Office (the "PTO").

Prior S.D.N.Y. Lawsuit. In § 6.3 of the Agreement, titled "Validity of the Trademark," Faribault agreed to the following no-challenge provision concerning the Pouch Trademark:

> "Faribault acknowledges the validity of the Trademark and covenants and agrees not to either directly or indirectly (a) challenge [Capri Sun's] ownership of or right to license, or the validity of the Trademark, any application for registration thereof, or any trademark registration thereof; or (b) contest the fact that Faribault's rights under this Agreement are solely those of a non-exclusive licensee" (the "No-Challenge Provision").

Faribault agreed in Section 5.4 of the Agreement that the No-Challenge Provision would survive the Agreement's termination. Pursuant to Section 4.5 of the Settlement Agreement, Capri Sun and Faribault filed a Stipulation and Order of Dismissal With Prejudice with the Court, dismissing their claims and counterclaims in the Prior S.D.N.Y. Lawsuit with prejudice. The Honorable Kimba M. Wood "So Ordered" the Stipulation on July 21, 2016.

Pursuant to § 10.2.1 of the Settlement Agreement, on November 1, 2016, Faribault assigned the Settlement Agreement to American Beverage Corporation ("ABC") in conjunction with ABC's acquisition of certain of Faribault's beverage business assets (the "Assignment"). The Assignment of the Settlement Agreement from Faribault to ABC included, among other things, the obligation in § 6.3 of the Settlement Agreement not to challenge, directly or indirectly, the validity of the Pouch Trademark. On March 26, 2018, ABC sent Capri Sun written notice of its intent to terminate the Settlement Agreement pursuant to § 5.2.3 thereof. On April 11, 2018, Capri Sun sent ABC a written acknowledgement of ABC's intent to terminate the Agreement, and reminded ABC that certain of its obligations – including the No-Challenge Provision in § 6.3 – would survive the Agreement's termination. ABC wrote back to Capri Sun on April 27, 2018, expressly acknowledging ABC's obligations under the Agreement. Capri Sun commenced the current lawsuit on February 14, 2019. Capri Sun alleges that ABC is, *inter alia*, breaching the Agreement by continuing to use the Pouch Trademark after the Agreement's expiration. ABC has asserted numerous defenses in the litigation, including the defense of trademark functionality.

**B. Questions Presented**

The parties agree that they would like the Court to address the following two issues:

1. Does the No-Challenge Provision in the Parties' Settlement and License Agreement prohibit ABC from raising the defense of functionality for the purpose of challenging the validity of the '517 Registration?

2. Does the No-Challenge Provision in the Parties' Settlement and License Agreement prohibit ABC from raising the defense of functionality for purposes of the Court's infringement analysis?

**C. Capri Sun's Analysis**

Regarding the first Question Presented, Capri Sun respectfully submits that the No-Challenge Provision definitively prohibits ABC from asserting the defense of trademark functionality for the purpose of challenging the Pouch Trademark's validity.

Under the plain, unambiguous language of the No-Challenge Provision, which survived the Agreement's termination, and ABC remains bound by, ABC cannot "directly or indirectly (a) challenge […] the validity of the [Pouch] Trademark." ABC's argument that the incontestable Pouch Trademark is functional is just that: a challenge to the Pouch Trademark's validity. *See* 15 U.S.C. § 1064(3); *see also* 15 U.S.C. § 1115(b)(8) (*accord*). Notwithstanding the plain, unambiguous language of the No-Challenge Provision, ABC contends that it can challenge the validity of the Pouch Trademark on functionality grounds because the No-Challenge Provision is allegedly void as against public policy. As discussed *infra*, ABC is wrong for at least three reasons.

First, the No-Challenge Provision is part of the Agreement that Faribault and Capri Sun duly executed to settle the Prior S.D.N.Y. Lawsuit. "Settlement agreements to end litigation are strongly favored by courts"—especially in New York—as a means of promoting judicial economy. *Suarez v. SCF Cedar, LLC*, 2016 WL 6601547, *1 (S.D.N.Y., Mar. 14, 2016) (citing *Willgerodt on Behalf of Majority Peoeples' Fund for the 21st Century, Inc. v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997) ("Settlement agreements are strongly favored in New York […]")); *see also Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1370 (Fed. Cir. 2001) ("Upholding the terms of settlement agreements encourages [intellectual property] owners to agree to settlements and promotes judicial economy").

Second, the Agreement included a non-exclusive trademark license agreement that governed Faribault and ABC's use of the Pouch Trademark. Public policy favors enforcing this trademark license agreement against ABC. *See DC Comics v. Kryptonite Corp.*, 336 F. Supp. 2d 324, 334 (S.D.N.Y. 2004) (Explaining that the public's interest in trademarks is avoiding a threat to the public's health and safety based on confusion about the source of goods and services) *but see Idaho Potato Commission v. M&M Produce Farm & Sales*, 335 F.3d 130, 139 (2d Cir. 2003) (The Second Circuit observing that the public's interest in avoiding confusion does not trump the public policy in favor of enforcing contracts) (*citing with approval Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326, 328-329 (6th Cir. 1973) (Holding public's interest in trademarks did not trump holding defendant to agreement, wherein it recognized the validity of the mark-in-suit and, thus, could not challenge the mark's validity)).

Third, prior to executing the Term Sheet, the Agreement, <u>and</u> dismissing its Counterclaims in the Prior S.D.N.Y. Lawsuit with prejudice, Faribault (represented by competent counsel at the law firm of PAUL HASTINGS LLP) had the opportunity to—*and did*: (i) challenge the validity of the Pouch Trademark on functionality grounds, and (ii) seek discovery on that issue. Based on these undisputed facts, this Court should not permit ABC to upend the No-Challenge Provision and re-litigate the issue of functionality in this lawsuit. Indeed, the authority relied upon by ABC in its attempts to void the Agreement enforce this same conclusion. *See, e.g.*, *Rates Technology Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 172 (2d Cir. 2012) (The Second Circuit opining "[t]he fact that parties have conducted discovery [on validity] seems to us significant […]") (*citing with*

*approval Flex-Foot, Inc.*, 238 F.3d at 1370 ("Once an accused infringer has challenged patent validity, has had an opportunity to conduct discovery on validity issues, and has elected to voluntarily dismiss the litigation with prejudice under a settlement agreement containing a clear and unambiguous undertaking not to challenge validity and/or enforceability of the patent in suit, the accused infringer is contractually estopped from raising any such challenge in any subsequent proceeding")).

Regarding the Second Question Presented, the Court's infringement analysis consists of two steps, namely: (i) determining whether Capri Sun's Pouch Trademark is valid and entitled to protection, and (ii) determining whether ABC is using its pouch in a manner that is likely to cause confusion with Capri Sun's Pouch Trademark. *See, e.g.*, *Tiffany and Co. v. Costco Wholesale Corp.*, 127 F. Supp. 3d 241, 254 (S.D.N.Y. 2015). Trademark functionality plays no role in the Court's infringement analysis in this case. *See discussion infra*.

For the reasons discussed in connection with the first question presented, the No-Challenge Provision estops ABC from asserting trademark functionality under the first step of the Court's infringement analysis. Trademark functionality is also irrelevant to the second step. Indeed, "[i]n evaluating the likelihood of consumer confusion, courts in the Second Circuit adhere to the test articulated in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961) ('*Polaroid*'), in which the court laid out a number of factors by which the likelihood of confusion is measured." *Tiffany and Co.*, 241 F. Supp. 2d at 427. The "*Polaroid*" "factors include: the strength of the Plaintiff's mark; the degree of similarity between the Plaintiff's and Defendant's marks; the proximity of the products or services in the marketplace; evidence of actual confusion; the Defendant's good faith in adopting its own mark; the quality of the defendant's product; and the sophistication of the relevant population of consumers." *Id*. Capri Sun contends that functionality is not relevant to any of the *Polaroid* factors. Whether or not a plaintiff's mark is functional has no bearing on whether the *defendant* is engaging in conduct that is likely to cause consumer confusion. *See, e.g.*, *Malletier v. Donkey & Bourke, Inc.*, 340 F. Supp. 2d 415, 440 (S.D.N.Y. 2004) (The court assessing functionality within the context of trademark validity, not within the context of the alleged likelihood of confusion); *Au-Tomotive Gold, Inc. v. Volkswagen of American, Inc.*, 457 F.3d 1062, 1074-75 (9th Cir. 2006) ("Although we conclude that Volkswagen and Audi's registered trademarks are not 'functional,' and thus are protectable, it remains to be determined whether Auto Gold is infringing those marks").

In short, ABC cannot assert functionality under the first prong of the Court's infringement analysis, and functionality is irrelevant to the second prong. Permitting ABC to assert functionality for purposes of the Court's infringement analysis would, therefore, serve only one purpose – to indirectly challenge to the Pouch Trademark's validity. *However*, as discussed *supra*, the No-Challenge Provision expressly prohibits direct *and* indirect challenges to the validity of the Pouch Trademark. Accordingly, Capri Sun contends that ABC cannot assert trademark functionality for purposes of this Court's infringement analysis.

**D. ABC's Analysis**

The Honorable Paul A. Engelmayer
June 26, 2019
Page 6

Functionality is relevant here in two ways: (1) as to invalidity, the No-Challenge Provision is void as against public policy; and (2) functionality is relevant to a proper infringement analysis. In assessing the enforceability of the No-Challenge Provision, the Court must "weigh the federal policy embodied in the law of intellectual property against even explicit contractual provisions and render unenforceable those provisions that would undermine the public interest." *Idaho Potato Comm'n v. M&M Produce Farm & Sales*, 335 F.3d 130, 137 (2d Cir. 2003) (citing *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969)). The federal policy behind "the functionality defense is to prevent advances in functional design from being monopolized by the owner of the design's trade dress in order to 'encourage competition and the broadest dissemination of useful design features.'" *Fabrication Enters., Inc. v. Hygenic Corp.*, 64 F.3d 53, 58 (2d Cir. 1995) (quoting *Warner Bros., Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 331 (2d Cir. 1983)). The doctrine "prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legal competition by allowing a producer to control a useful product feature." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164 (1995). "If a product's functional features could be used as trademarks … a monopoly over such features could be obtained without regard to whether they qualify as patents and could be extended forever." *Id.* at 164-65.

Although ABC is aware of no cases where courts have balanced a functionality defense against a no-contest clause, the above-described policy is akin to the policy behind validity challenges to patents. *See, e.g., Rates Tech., Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 167 (2d Cir. 2012) ("Federal patent law, by contrast, requires 'that all ideas in general circulation be dedicated to the common good unless they are protected against a valid patent.'") (quoting *Lear*, 395 U.S. at 668). Both policies seek to promote fair competition by precluding the unauthorized monopolization of ideas that should be dedicated to the public. Such a policy interest consistently has trumped policies behind contract enforcement. *See, e.g., id.*; *Lear*, 395 U.S. at 673-74.

The policies behind the functionality defense are fully in evidence in this case. *See Idaho Potato*, 335 F.3d at 139 ("[T]o decide the issue of public injury we must look to the public interest implicated by the merits of the licensee's challenges."). As the Supreme Court has explained, a prior patent "has vital significance in resolving the trade dress claim. A utility patent is strong evidence that the features therein claimed are functional." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001). Here, not only did Capri Sun[3] have an exclusive sublicense for the right to use the technology claimed in the '646 patent (*i.e.*, the pouch design presently in dispute) (*see Statement of Undisputed Facts ("SUF"*, ¶ 55), it sought trademark protection for that very same design within three months of the expiration of the patent. *See id.* at ¶¶ 52-54 and Ex. K ('646 Patent); *SUF* at ¶¶ 3-5 and Ex. B (the Pouch Trademark). Further, in seeking trademark protection for its pouch design, Capri Sun did not hesitate to extol the functional virtues of that design. *See, e.g., SUF* at ¶¶ 7-16. By its misuse of trademark law, Capri Sun has extended into four decades its monopoly on a design that should have lasted seventeen years. That misuse

---

[3] For purposes herein, "Capri Sun" refers to the plaintiff Capri Sun GmbH, and its parent and predecessor-in-interest Rudolph Wild GmbH & Co. KG (formerly Zick-Zack Werk Rudolf Wild, the applicant for the Pouch Trademark before the United States Patent and Trademark Office). *See* SUF at ¶¶ 1-2, 5.

exemplifies the kind of abuse that the functionality defense is designed to weed out. *See Qualitex Co.,* 514 U.S. at 164-65; *Fabrication Enters.,* 64 F.3d at 58.

The public interest described above must be balanced against "the important policy of enforcing settlement agreements and res judicata." *Idaho Potato*, 335 F.3d at 135. In *Rates Technology*, the Second Circuit stated in dicta that the policies behind enforcement of a no-contest clause in a settlement agreement *could* trump if, before entering into the agreement, the parties engaged in full and complete discovery on the invalidity issue. *See Rates Tech.*, 685 F.3d at 172. To be clear, the Second Circuit stated only that full discovery "*may* support" a rule that upholds no-contest clauses, but it did not hold that that would be the case. *Id.* (emphasis in original). Indeed, the overall holding calls into question whether the Second Circuit would *ever* enforce a no-contest clause in a settlement agreement where the unauthorized monopolization of ideas is at issue. *Id*.

In any event, the Court provided two reasons why full discovery was necessary before even considering the enforcement of a no-contest clause in a settlement agreement: (1) "it suggests that the alleged infringer has had a full opportunity to assess the validity of the patent, and is therefore making an informed decision to abandon her challenge to its validity"; and (2) "the fact that the parties have conducted discovery is evidence that they had a genuine dispute over the patent's validity…." *Id.* No such discovery took place in the prior litigation. While ABC's predecessor initiated discovery on functionality, the case settled long before meaningful discovery was taken. No documents on functionality were produced, no interrogatories on the topic were asked or answered, and no depositions of any kind were taken. *See* SUF at ¶¶ 67-69. In short, while the Second Circuit provides only dicta on the subject, the conditions it requires to even consider enforcement of a no-contest clause in a settlement agreement do not exist here.

Finally, and independent of validity, where the asserted mark is a product design, as is the case here, functionality must be considered when performing a proper infringement analysis. Specifically, a product design infringement analysis requires "two stages of inquiry": (1) whether plaintiff has proved secondary meaning and confusion; and (2) whether defendant has proved that the "similar arrangement of features is functional." *Stormy Clime Ltd. v. ProGroup, Inc.*, 809 F.2d 971, 974 (2d Cir. 1987), *disagreed with on other grounds by Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992). In performing the stage two analysis, several factors "should be considered along a continuum": "(1) the degree of functionality of the similar features of a product, (2) the degree of similarity between the non-functional (ornamental) features of the competing products, and (3) the feasibility of the alternative designs that would impair the utility of the product." *Fabrication Enters.,* 64 F.3d at 59. The No-Challenge Provision does not implicate any of those issues because the clause only addresses invalidity challenges. Because functionality also is relevant to non-infringement, it is inextricably a part of this case.

Based on the foregoing, ABC respectfully seeks permission to brief the above-identified Questions Presented (*see* § B, *supra*) regarding the availability of the functionality defense in this matter, in accordance with the terms and schedule presented herein.

Mayer Brown LLP

      On behalf of the parties, we thank the Court for its assistance with this dispute.

                Very truly yours,

                */s/ A. John P. Mancini*
                A. John P. Mancini

cc: All counsel of record (*via ECF*)