**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAPRI SUN GMBH, | |
| Plaintiff, | Civil Action No.: 19 Civ. 1422 (PAE) |
| vs. | |
| AMERICAN BEVERAGE CORPORATION, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF**
**CAPRI SUN GMBH'S MOTION TO STRIKE AND FOR A PROTECTIVE ORDER**

**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020-1001
Tel.: (212) 506 2500
Fax: (212) 262 1910

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ............................................................................ 1

II. FACTUAL BACKGROUND ............................................................................ 3

    A. The Prior S.D.N.Y. Lawsuit............................................................................ 3

        1. Faribault Challenged the Pouch Trademark's Validity
           on Functionality Grounds, and Sought Discovery on that Issue,
           in the Prior S.D.N.Y. Lawsuit................................................................ 4

           a. Faribault's First Set of Document Requests ................................. 5

           b. Faribault's Third Set of Document Requests................................. 5

           c. Faribault's First Set of Requests for Admission ........................... 6

           d. Faribault's Rule 30(b)(6) Deposition Notice ................................ 7

        2. The Settlement Term Sheet........................................................................ 7

        3. The Settlement and License Agreement .................................................... 8

    B. Faribault Duly Assigned the Agreement and No-Challenge Provision to ABC.......... 8

    C. ABC Terminated, and Acknowledged its Obligations Under, the Agreement............ 8

    D. The Current Lawsuit ............................................................................ 9

        1. ABC Challenged the Pouch Trademark's Validity on Functionality Grounds
           in its Third and Ninth Affirmative Defenses in the Current Lawsuit .................... 9

        2. ABC is Seeking Discovery on the Issue of Whether the Pouch Trademark
           is Allegedly Invalid on Functionality Grounds in the Current Lawsuit............... 10

           a. ABC's First Set of Document Requests......................................... 10

           b. ABC's First Set of Interrogatories................................................ 10

           c. ABC's Second Set of Document Requests .................................... 11

    E. The Current Issues Before the Court ....................................................... 11

III. LEGAL STANDARDS ............................................................................ 12

IV. ANALYSIS............................................................................................ 12

    A. Questions Presented ............................................................................ 14

        1. The No-Challenge Provision Estops ABC from Challenging the Pouch
           Trademark's Validity on Functionality Grounds.......................................... 14

        2. The No-Challenge Provision Estops ABC from
           Asserting the Defense of Trademark Functionality for Purposes of this
           Court's Infringement Analysis.............................................................. 15

    B. Remedies............................................................................................ 17

        1. This Court Should Strike all Allegations Concerning the Pouch
           Trademark's Alleged Functionality from ABC's Third and Ninth
           Affirmative Defenses ........................................................................ 17

        2. This Court Should Enter a Protective Order Concerning Functionality.............. 19

    C. The Agreement, and the No-Challenge Provision, are Valid and Enforceable ........ 20

1. Public Policy Strongly Favors Enforcing Settlement Agreements that Resolve Litigations, Like the Agreement ........................................................... 21

2. Public Policy Favors Enforcing Trademark Agreements, Like the Agreement ........................................................................................................ 21

3. Public Policy Favors Enforcing No-Challenge Provisions After Parties Have Challenged, and Sought Discovery on, the Issue of Validity ..................... 23

V. CONCLUSION ...................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexsam, Inc. v. MasterCard Int'l Inc.*,
2017 WL 9482100 (E.D.N.Y., Mar. 6, 2017) ............................................................13, 17, 21

*Au-Tomotive Gold, Inc. v. Volkswagen of American, Inc.*,
457 F.3d 1062 (9th Cir. 2006) ................................................................................................16

*Chloe Shipping Corp. v. Mediterranean Shipping Co.*,
1999 WL 675985 (S.D.N.Y., Aug. 30, 1999) ........................................................................20

*Dan-Bunkering (America), Inc. v. Tecnologias Relacionadas Con Energie y
Servicios Especializados, S.A. de C.V.*,
2019 WL 1877344 (S.D.N.Y., April 26, 2019) ......................................................................17

*DC Comics v. Kryptonite Corp.*,
336 F. Supp. 2d 324 (S.D.N.Y. 2004)....................................................................................22

*Dove v. Atlantic Capital Corp.*,
963 D.2d 15 (2d Cir. 1992) .....................................................................................................19

*EC v. American Growth Funding II, LLC*,
2016 WL 8314623 (S.D.N.Y., Dec. 30, 2016) ......................................................................12

*Flex-Foot, Inc. v. CRP, Inc.*,
238 F.3d 1362 (Fed. Cir. 2001)..........................................................................13, 18, 21, 24

*Genese Brewing Co., Inc. v. Stroh Brewing Co.*,
124 F.3d 137 (2d Cir. 1997)....................................................................................................20

*Hasbrouck v. BankAmerica Housing Services*,
187 F.R.D. 453 (N.D.N.Y. 1999) ...........................................................................................19

*HSW Enterprises, Inc. v. Woo Lae Oak, Inc.*,
2009 WL 4823920 (S.D.N.Y., Dec. 15, 2009) ......................................................................15

*Icahn School of Medicine at Mount Sinai v. Neurocrine Biosciences, Inc.*,
243 F. Supp. 3d 470 (S.D.N.Y. 2017)........................................................................17, 18, 19

*Invisible Fences, Inc. v. Fido's Fences, Inc.*,
2014 WL 558672 (E.D. Tenn., Feb. 11, 2014) ......................................................................18

*Kenall Manufacturing Co. v. Cooper Lighting, LLC*,
354 F. Supp. 3d 877 (N.D. Ill. 2018) ......................................................................................18

*Lipsky v. Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976)......................................................................................18

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
    340 F. Supp. 2d 415 (S.D.N.Y. 2004)................................................................16, 23

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978)...................................................................................................20

*Paper Corp. of U.S. v. Schoeller Technical Papers, Inc.*,
    759 F. Supp. 1039 (S.D.N.Y. 1991)...........................................................................20

*Polaroid Corp. v. Polarad Elecs. Corp.*,
    287 F.2d 492 (2d Cir. 1961).......................................................................................16

*Pony Pal, LLC v. Claire's Boutique, Inc.*,
    2006 WL 846354 (S.D.N.Y., Mar. 31, 2006) ...........................................................18

*Publications Intern., Ltd. v. Landoll, Inc.*,
    164 F.3d 337 (7th Cir. 1998) .....................................................................................20

*Rates Technology Inc. v. Speakeasy, Inc.*,
    685 F.3d 163 (2d Cir. 2012).......................................................................................24

*Serby v. First Alert, Inc.*,
    934 F. Supp. 2d 506 (E.D.N.Y. 2013) .......................................................................21

*SRAM, LLC v. Hayes Bicycle Group, Inc.*,
    973 F. Supp. 2d 894 (N.D. Ill. 2013) ........................................................................18

*Suarez v. SCF Cedar, LLC*,
    2016 WL 6601547 (S.D.N.Y., Mar. 14, 2016) ...................................................13, 21

*Tiffany and Co. v. Costco Wholesale Corp.*,
    127 F. Supp. 3d 241 (S.D.N.Y. 2015)..................................................................15, 16

*WGH Holdings, Inc. v. Greenberg*,
    2008 WL 80932 (S.D.N.Y., Jan. 8, 2008) ................................................................23

*Williams v. First Nat. Bank*,
    216 U.S. 582 (1910).................................................................................................21

**Statutes**

15 U.S.C. 1115(b)(4) ...................................................................................3, 14, 15

15 U.S.C. § 1064(3) ...........................................................................................14

**Other Authorities**

Fed. R. Civ. P. 12(f)(1) ............................................................................... *passim*

Fed. R. Civ. P. 26(c)(1)(D) ......................................................................... *passim*

McCarthy on Trademarks and Unfair Competition § 7:84 (5th ed. 2019)..........................14

# I.     PRELIMINARY STATEMENT

This litigation arises out of a Settlement and License Agreement (the "Agreement") between the parties to this lawsuit (and their predecessors-in-interest).  The Agreement resolved a prior litigation between the parties in this district involving virtually identical claims, products, and defenses – including a defense that Plaintiff's famous, decades-old, registered, and incontestable pouch-design trademark (the "Pouch Trademark") was allegedly functional.  After challenging the Pouch Trademark's validity on functionality grounds, and seeking discovery on that issue, in the prior litigation, Defendant American Beverage Corporation's ("ABC") predecessor-in-interest dismissed its counterclaims with prejudice – and agreed never to directly or indirectly challenge the Pouch Trademark's validity, again.  Accordingly, ABC is estopped from challenging the Pouch Trademark's validity, and seeking discovery on that issue, in this lawsuit.  Yet, that is precisely what ABC is doing.

As background, in 2015, Capri Sun sued Faribault Foods, Inc. ("Faribault") in this district for infringing the Pouch Trademark.  After Faribault challenged the Pouch Trademark's validity on functionality grounds in its affirmative defenses and counterclaims, and sought discovery on that issue, Faribault and Capri Sun duly executed the Agreement in July 2016.  In the Agreement, Faribault, *inter alia*: (i) expressly acknowledged the Pouch Trademark's validity, and agreed never to directly or indirectly challenge the Pouch Trademark's validity (the "No-Challenge Provision"), and (ii) agreed to (and did) dismiss its counterclaims *with prejudice*.

In November 2016, Faribault duly assigned the Agreement – including the No-Challenge Provision – to the Defendant ABC.  In 2018, ABC suddenly terminated the Agreement.  As ABC acknowledged to Capri Sun in writing, certain obligations under the Agreement survived its termination – including the No-Challenge Provision.

Capri Sun subsequently discovered that ABC was using Capri Sun's famous Pouch Trademark to sell competing beverage products after the Agreement terminated. After ABC refused to cease its unlawful conduct, Capri Sun commenced this lawsuit in early 2019 for, *inter alia*, breach of contract and trademark infringement. Ostensibly recognizing that ABC's pouches are confusingly similar to Capri Sun's famous Pouch Trademark, ABC seeks to avoid liability in this lawsuit the same way that Faribault tried to in the prior lawsuit, *i.e.*: by challenging the Pouch Trademark's validity on the ground that is allegedly functional.

Notwithstanding the plain, unambiguous language of the No-Challenge Provision, ABC contends that it can challenge the Pouch Trademark's validity on functionality grounds in this lawsuit because the No-Challenge Provision – negotiated by Faribault's attorneys at Paul Hastings LLP – allegedly violates public policy. ABC's apparent reasoning is that patent law is analogous to this breach-of-contract and trademark lawsuit, and the No-Challenge Provision would allegedly be invalid under patent law. Put simply, ABC is wrong.

As a preliminary matter, patents are fundamentally different from trademarks. Indeed, patents grant monopolies over novel methods and the like, whereas trademarks identify and distinguish the sources of goods and services in the marketplace. Nonetheless, even in the patent context, courts have upheld plain, unambiguous no-challenge provisions in settlement agreements that resolve litigations – like the Agreement. This is because the public policies in favor of judicial economy and holding parties to the terms of their bargains override any interest that the public may have in discovering invalid patents. Permitting ABC to upend the No-Challenge Provision and litigate the issue of trademark validity before the same court in this lawsuit again would not only flaunt these public policies, but also it would cause Capri Sun to expend unnecessary time and expenses on litigating an issue that ABC (via Faribault) contractually agreed not to raise again.

To prevent this injustice, this Court should: (i) strike all allegations from ABC's Affirmative Defenses concerning the alleged functionality of the Pouch Trademark, and (ii) enter a Protective Order, directing that Capri Sun does not have to respond to ABC's outstanding discovery requests concerning functionality, and forbidding ABC from seeking any further discovery on, or otherwise inquiring into, the matter of functionality.

## II.    FACTUAL BACKGROUND

Capri Sun owns incontestable U.S. Trademark Reg. No. 1,418,517 (the "'517 Registration"), which covers the famous Pouch Trademark in Class 32 for "fruit juice drinks containing water":



Int. Cl.: 32
Prior U.S. Cl.: 45
United States Patent and Trademark Office    Reg. No. 1,418,517
Registered Nov. 25, 1986
TRADEMARK
PRINCIPAL REGISTER

*See* Dkt. 31-1 at ¶¶ 3-4, 17-21; Exhs. A, B[1].

Pursuant to 15 U.S.C. § 1115(b)(4), the incontestable '517 Registration is conclusive evidence of: (i) the Pouch Trademark's validity;  (ii) the validity of the registration of the Pouch Trademark; (iii) Capri Sun's ownership of the Pouch Trademark; and (iv) Capri Sun's exclusive right to use the Pouch Trademark for fruit juice drinks containing water.  SUF at ¶¶ 17-21.

### A.  The Prior S.D.N.Y. Lawsuit

On July 24, 2015, Capri Sun (then known as SiSi-Werke Betriebs GmbH[2]) commenced a lawsuit in the United States District Court for the District of Minnesota against Faribault, styled

---

[1] Dkt. 31-1 is the parties' June 26, 2019 statement of "Undisputed Facts for Functionality Briefing" (the "SUF")
[2] On December 17, 2018, Capri Sun duly recorded its change of name from SiSi-Werke Betriebs GmbH to Capri Sun GmbH with the U.S. Patent and Trademark Office (the "PTO").  SUF at ¶¶ 1, 2; Exh. A.

*Deutsche SiSi-Werke Betriebs GmbH v. Faribault Foods, Inc.*, Case No. 0:15-cv-03138 (the "Minnesota Action"). SUF at ¶¶ 23-4, Exh. D. On December 8, 2015, the Minnesota Action was transferred to this district as: *Deutsche SiSi-Werke Betriebs GmbH v. Faribault Foods, Inc.*, Case No. 1:15-cv-09750 (S.D.N.Y.) (the "Prior S.D.N.Y. Lawsuit"). *Id.* at ¶ 27, Exh. E. In the Minnesota Action and the Prior S.D.N.Y. Lawsuit, Capri Sun alleged that Faribault was infringing the Pouch Trademark. *Id.* at ¶¶ 25, 26, 29, 30, 40, 41; Exhs. D, F, H.

### 1. Faribault Challenged the Pouch Trademark's Validity on Functionality Grounds, and Sought Discovery on that Issue, in the Prior S.D.N.Y. Lawsuit

In the Prior S.D.N.Y. Lawsuit, Faribault challenged the Pouch Trademark's validity on functionality grounds in its Second and Third Affirmative Defenses:

"<u>Functionality of SiSi's Purported Trademark</u>

SiSi's claims are barred because the pouch design that is the subject of the SiSi Registration and in which SiSi claims trademark rights is functional and is incapable of legal protection under the Lanham Act, and under New York statutory law and under New York State common law." SUF at ¶¶ 31, 32; Exh. G at p. 18; *id.* at ¶¶ 42, 43; Exh. I at p. 27.

<u>"SiSi's Purported Trade Dress is Functional and/or Generic</u>

SiSi's claims are barred because the 'silver edging around the primary design, i.e., the aluminum border of the pouch, which SiSi asserts as an element of its trade dress, is functional and is incapable of legal protection under the Lanham Act, under New York State statutory law and under New York State common law." SUF at ¶¶ 44, 45; Exh. I at p. 27.

In the Prior S.D.N.Y. Lawsuit, Faribault also challenged the Pouch Trademark's validity on functionality grounds in each of its three Counterclaims, titled: (i) "Declaratory Judgment of Functionality and Invalidity Based on the Lanham Act"; (ii) "Declaratory Judgment of Functionality and Invalidity Based on State Statutory and Common Law"; and (iii) "Cancellation of SiSi Registration and Rectification of the Principal Register." SUF at ¶¶ 34-38, 45-49; Exhs. G, I. In support of Faribault's First and Second Counterclaims, Faribault alleged "[t]he pouch

design depicted in the SiSi Registration is a functional design for packaging for pouch beverages […].” *Id.* at ¶ 47.  In support of Faribault’s Third Counterclaim, Faribault alleged “[t]he pouch design depicted in the SiSi Registration is functional, is not entitled to federal registration, and should be cancelled on that basis.” *Id.* at ¶ 49.

In the Prior S.D.N.Y. Lawsuit, Faribault also discovery on the issue of whether the Pouch Trademark was allegedly functional in its: (i) first set of document requests; (ii) third set of document requests; (iii) first set of requests for admission; and (iv) Rule 30(b)(6) deposition.  SUF at ¶¶ 56-59, 62-64, 66; Exhs. L, M, O, P, Q.

### a. Faribault’s First Set of Document Requests

Request Nos. 27, 28, 29, and 30 in Faribault’s First Set of Document Requests in the Prior S.D.N.Y. Lawsuit sought discovery on the Pouch Trademark’s alleged functionality:

- Document Request No. 27*: “All documents relating to or concerning the cost and/or ease of manufacture of the SiSi Pouch.”*  SUF at ¶¶ 56-7; Exh. L, p. 11.

- Document Request No. 28*: “All documents relating to or concerning the cost and/or ease of manufacture of pouch designs for pouch beverages other than the SiSi Pouch.”  Id.*

- Document Request No. 29*: “All documents relating to or concerning benefits of the SiSi Pouch including but not limited to benefit in (i) manufacturing, (ii) storage, (iii) transport, (iv) distribution, and/or (v) product quality or integrity.”  Id.*

- Document Request No. 30*: “All documents relating to or concerning any utility patent other than the Utility Patent that relates to, covers, addresses or discloses pouch packaging.”  Id.* at p. 12*.*

### b. Faribault’s Third Set of Document Requests

Request No. 64 in Faribault’s Third Set of Document Requests in the Prior S.D.N.Y. Lawsuit sought discovery on the Pouch Trademark’s alleged functionality: *“All documents relating to or concerning the design, selection, and use of (a) the Asserted Trade Dress Elements and (b) the*

*Asserted Trade Dress on the CAPRI SUN Pouch, including the consideration of alternate designs or design elements."* SUF at ¶¶ 63-4; Exh. P, p. 2.

### c. Faribault's First Set of Requests for Admission

Request Nos. 29, 30, 36, 37, 38, 39, 40, 41, 42, 43, 44, and 45 in Faribault's First Set of Requests for Admission in the Prior S.D.N.Y. Lawsuit sought discovery on the Pouch Trademark's alleged functionality:

- Request for Admission No. 29: *"Admit that the SiSi Pouch is designed to stand on its own."* SUF at ¶¶ 58-9; Exh. M, p. 6.

- Request for Admission No. 30: *"Admit that the design of the SiSi Pouch is the best design for a stand-up pouch beverage."* Exh. L at p. 6. Faribault served a Revised Request for Admission No. 30 on SiSi in the Prior S.D.N.Y. Lawsuit, which requested that SiSi "[a]dmit that Plaintiff is unaware of any design for a pouch beverage package that provides greater benefits to consumers than the design of the SiSi Pouch." SUF at ¶ 60; Exh. N, p. 5.

- Request for Admission No. 36: *"Admit that the SiSi Pouch provides a flat area for the CAPRI SUN Word Mark and graphics."* SUF at ¶¶ 58-9; Exh. M at p. 6. Faribault served a Revised Request for Admission No. 36 on SiSi in the Prior S.D.N.Y. Lawsuit, which requested that SiSi "[a]dmit that the SiSi Pouch provides a front panel that allows consumers to view the CAPRI SUN Word Mark and asserted trade dress elements at the same time." SUF at ¶ 60; Exh. N, p. 6.

- Request for Admission No. 37: *"Admit that the SiSi Pouch is less expensive to manufacture than any other stand-up pouch packaging known to Plaintiff for use in connection with juice."* SUF at ¶¶ 58-9; Exh. M, p. 7.

- Request for Admission No. 38: *"Admit that the SiSi Pouch is easier to manufacture than any other stand-up pouch packaging known to Plaintiff for use in connection with juice."* Id.

- Request for Admission No. 39: *"Admit that the SiSi Pouch is easier to manufacture than Faribault's 2005 Pouch."* Id.

- Request for Admission No. 40: *"Admit that the SiSi Pouch is less expensive to manufacture than Faribault's 2005 Pouch."* Id.

- Request for Admission No. 41: *"Admit that the SiSi Pouch is designed to withstand high presses and violent shocks without danger of breaking."* Id.

- Request for Admission No. 42: *"Admit that Plaintiff began using the SiSi Pouch because it was better than what had been previously used in the market for juice."* *Id.* Faribault served a Revised Request for Admission No. 42 on SiSi in the Prior S.D.N.Y. Lawsuit, which requested that SiSi "[a]dmit that Plaintiff began using the SiSi Pouch because it provided benefits compared to other packaging then being used in the market for juice." SUF at ¶ 60; Exh. N, p. 6.

- Request for Admission No. 43: *"Admit that allowing Plaintiff to enforce its claimed trademark would extend the exclusivity of the Utility Patent."* SUF at ¶¶ 58-9; Exh. M, p. 7.

- Request for Admission No. 44: *"Admit that if Plaintiff were permitted exclusive use of the SiSi Pouch competitors would be competitively disadvantaged."* *Id.*

- Request for Admission No. 45: *"Admit that Plaintiff modified the SiSi Pouch to have a transparent bottom."* *Id.*

### d. Faribault's Rule 30(b)(6) Deposition Notice

Topic No. 41 in the Rule 30(b)(6) Deposition Notice that Faribault served in the Prior S.D.N.Y. Lawsuit sought testimony on the "functionality, or lack thereof, of the [] Pouch [Trademark]." SUF at ¶ 66; Exh. Q at ¶ 41.

### 2. The Settlement Term Sheet

On June 3, 2016, Capri Sun and Faribault's representatives duly executed a Settlement Term Sheet to resolve the Prior S.D.N.Y. Lawsuit (the "Term Sheet"). SUF at ¶ 70; Exh. R. In the Term Sheet, "Faribault acknowledge[d] the validity of the [Pouch] Trademark and covenants not to directly or indirectly challenge or contest, or assist in the challenging or contesting, of the validity, enforceability or ownership of the [Pouch] Trademark." *Id.* at ¶¶ 71, 72. In the Term Sheet, Capri Sun and Faribault agreed to dismiss their claims and counterclaims in the Prior S.D.N.Y. Lawsuit with prejudice. *Id.* at ¶ 73. Faribault agreed to, and executed, the Term Sheet *after* challenging the Pouch Trademark's validity on functionality grounds and seeking discovery on that issue in the Prior S.D.N.Y. Lawsuit. *Compare id.* at ¶¶ 31, 32, 42-45, 56-59, 62-64, 66 *with id.* at ¶ 71.

### 3. The Settlement and License Agreement

On July 1, 2016, Capri Sun and Faribault duly executed the Agreement, which memorialized the agreements contained in the Term Sheet and resolved the Prior S.D.N.Y. Lawsuit. SUF at ¶ 75. In § 6.3 of the Agreement, titled "Validity of the Trademark," Faribault agreed to the No-Challenge Provision, which provides, in pertinent part:

> "Faribault acknowledges the validity of the [Pouch] Trademark and covenants and agrees not to either directly or indirectly (a) challenge […] the validity of the [Pouch] Trademark […]. SUF at ¶¶ 76, 77.

Pursuant to § 4.5 of the Settlement Agreement, Capri Sun and Faribault filed a Stipulation and Order of Dismissal With Prejudice with the Court, dismissing their claims and counterclaims in the Prior S.D.N.Y. Lawsuit with prejudice. SUF at ¶ 79. The Honorable Kimba M. Wood "So Ordered" the Stipulation on July 21, 2016. *Id*. at ¶ 80; Exh. S. Faribault agreed to, and executed, the Agreement *and* dismissed its counterclaims with prejudice *after* challenging the Pouch Trademark's validity on functionality grounds and seeking discovery on that issue in the Prior S.D.N.Y. Lawsuit. *Compare* SUF. at ¶¶ 31, 32, 42-45, 56-59, 62-64, 66 *with id*. at ¶ 71.

### B. Faribault Duly Assigned the Agreement and No-Challenge Provision to ABC

On November 1, 2016, Faribault duly assigned the Agreement to ABC in conjunction with ABC's acquisition of certain of Faribault's beverage business assets (the "Assignment"). SUF at ¶ 82. The Assignment of the Agreement from Faribault to ABC included, *inter alia*, the No-Challenge Provision. *Id*.

### C. ABC Terminated, and Acknowledged its Obligations Under, the Agreement

On March 26, 2018, ABC sent Capri Sun written notice of its intent to terminate the Agreement pursuant to § 5.2.3 thereof. SUF at ¶¶ 83, 84; Exh. T. On April 11, 2018, Capri Sun sent ABC a written acknowledgement of ABC's notice of intent, and reminded ABC that certain of its obligations – including the No-Challenge Provision – would survive the Agreement's

termination. *Id*. at ¶¶ 85-87; Exh. U.  ABC wrote back to Capri Sun on April 27, 2018, expressly acknowledging ABC's obligations under the Agreement.  *Id*. at ¶¶ 88, 89, Exh. V.  Pursuant to § 5.4 of the Agreement, the No-Challenge Provision survived ABC's termination of the Agreement. *Id*. at ¶ 78.

### D.  The Current Lawsuit

Capri Sun commenced the current lawsuit on February 14, 2019, alleging that ABC is, *inter alia*, breaching the Agreement and committing trademark infringement by continuing to use the Pouch Trademark after the Agreement's expiration (the "Current Lawsuit").  SUF at ¶¶ 90-92. Just like Faribault did in the Prior S.D.N.Y. Lawsuit *before* executing the Term Sheet, the Agreement, *and* dismissing its counterclaims with prejudice – and notwithstanding the fact that ABC remains bound by the No-Challenge Provision – ABC is challenging the Pouch Trademark's validity on functionality grounds, and seeking discovery on that issue, in the Current Lawsuit.  *See generally* SUF at ¶¶ 93-104.

### 1.  ABC Challenged the Pouch Trademark's Validity on Functionality Grounds in its Third and Ninth Affirmative Defenses in the Current Lawsuit

ABC challenged the Pouch Trademark's validity on functionality grounds in its Third and Ninth Affirmative Defenses in the Current Lawsuit.  SUF at ¶ 94.  In ABC's Third Affirmative Defense, ABC alleged:

> "Plaintiff's claims are barred, in whole or in part, because it cannot recover for any confusion or likelihood of confusion premised upon the alleged similarity between the generic or <u>functional</u> or otherwise <u>non-protectable characteristics of the trademark depicted in the '517 Registration,</u> including but not limited to the pouches' height, weight, trapezoid shape, straight side and/or 'potbelly' at the below side, and which are essential to the purpose of ABC's pouch packaging and if excluded from public use would affect the cost and quality of that packaging and would put ABC at a significant non-reputation-related disadvantage" (emphasis added).  SUF at ¶ 95.

In ABC's Ninth Affirmative Defense, ABC Alleged:

"Plaintiff's claims are barred to the extent plaintiff is impermissibly attempting to broaden the scope of its '517 trademark by claiming that generic and <u>functional elements of a pouch container fall within its registration</u>" (emphasis added).

SUF at ¶ 96; *see also id.* at ¶ 97 (ABC claiming in the parties' joint-status letter that the allegedly functional elements of the Pouch Trademark are "not protectable under trademark law").

### 2. ABC is Seeking Discovery on the Issue of Whether the Pouch Trademark is Allegedly Invalid on Functionality Grounds in the Current Lawsuit

ABC is seeking discovery in the Current Lawsuit on the issue of whether the Pouch Trademark is allegedly invalid on functionality grounds.

#### a. ABC's First Set of Document Requests

In ABC's first set of document requests, ABC is seeking discovery on the issue of whether the Pouch Trademark is allegedly functional. *See* SUF at ¶¶ 99, 100; Exh. W at p. 8 (Document Request No. 14: *"All Documents and Things concerning every non-functional and functional element of any product sold under the '517 Mark or a license under the '517 Mark"*); *see also id.* at Exh. W, Document Request Nos. 3, 9-13, 15, 16, 19, 40, 43, 44, 46, 73-90, 95, 98 113, 114, 115 (*accord as to all*).

#### b. ABC's First Set of Interrogatories

In ABC's first set of interrogatories, ABC is seeking discovery on the issue of whether the Pouch Trademark is allegedly functional. *See* SUF at ¶¶ 101, 102; Exh. X at p. 6 (Interrogatory No. 5: *"Please describe with particularity each individual element of the '517 Mark that Plaintiff alleges is functional and non-functional"*); *see also id.* at Exh. X, Interrogatory Nos. 7, 9, 17, and 21 (*accord as to all*).

### c. ABC's Second Set of Document Requests

In ABC's second set of document requests, ABC is seeking discovery on the issue of whether the Pouch Trademark is allegedly functional. *See* SUF at ¶¶ 103, 104; Exh. Y at p. 7 (Document Request No. 126*: "All Documents and Things concerning the relationship between the '646 Patent, the '517 Mark and the Capri Sun Pouch Products"*); *see also id.* at Exh. Y, Document Request Nos. 128, 129, 130, 131, 132, 133, and 137 (*accord as to all*).

## E. The Current Issues Before the Court

On June 26, 2019, Capri Sun and ABC filed a joint letter with the Court, seeking a determination about whether ABC may assert trademark functionality as a defense in this case in light of the No-Challenge Provision (the "June 26 Letter"). *See* Dkt. 31 at 1. In the June 26 Letter, the parties agreed that ABC's asserted defense of trademark functionality presents two questions for the Court to adjudicate, namely:

1. "Does the No-Challenge Provision in the Parties' Settlement and License Agreement prohibit ABC from raising the defense of functionality for the purpose of challenging the validity of the '517 Registration?

2. Does the No-Challenge Provision in the Parties' Settlement and License Agreement prohibit ABC from raising the defense of functionality for purposes of the Court's infringement analysis?" Dkt. 31 at 3.

After meeting-and-conferring on the issue (via email), on July 1, 2019, the parties filed a follow-up joint letter with the Court, agreeing that: (i) Capri Sun is the movant, and (ii) Capri Sun seeks (a) an Order from this Court, pursuant to FED. R. CIV. P. 12(f)(1), striking all references in ABC's Affirmative Defenses to the alleged functionality of the Pouch Trademark, and (b) a Protective Order, pursuant to FED. R. CIV. P. 26(c)(1)(D), forbidding ABC from seeking any discovery on, or otherwise inquiring into, the matter of whether the Pouch Trademark is allegedly functional. Dkt. 33 at 1. On July 2, 2019, this Court Ordered Capri Sun to file its opening brief

on the foregoing issues by July 16, 2019.  Dkt. 35 at p. 2.  Accordingly, Capri Sun submits the following, timely brief.

## III.    LEGAL STANDARDS

Pursuant to FED. R. CIV. P. 12(f)(1), "[t]he court [on its own] may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter […]" at any time.  FRCP 12(f)(1).  Rule 12(f)(1) "prescribes no time limit on the Court's ability to act *sua sponte*, if it deems such action proper."  *EC v. American Growth Funding II, LLC*, 2016 WL 8314623, *4 (S.D.N.Y., Dec. 30, 2016).  Pursuant to FED. R. CIV. P. 26(c)(1)(D):

> "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: […] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters […]."  FRCP 26(c)(1)(D).

## IV.    ANALYSIS

This Court should strike all references from ABC's Affirmative Defenses concerning the Pouch Trademark's alleged functionality, and prevent ABC from seeking any discovery on that issue, given that the plain, unambiguous language of the No-Challenge Provision estops ABC from challenging the Pouch Trademark's validity directly and indirectly.

The No-Challenge Provision was a duly negotiated provision in the Agreement, which resolved the Prior S.D.N.Y. Lawsuit.  Before executing the Agreement and dismissing its counterclaims with prejudice, ABC's predecessor not only challenged the Pouch Trademark's validity on functionality grounds in the Prior S.D.N.Y. Lawsuit, but it also sought discovery on that issue.  What is more, the Agreement included a non-exclusive license that governed Faribault and ABC's use of the famous Pouch Trademark.

These undisputed facts establish that both the Agreement and the No-Challenge Provision therein are presumptively valid and enforceable against ABC. Courts throughout the country, including in this Circuit, have held as much when confronted with similar agreements. *See, e.g.*, *Alexsam, Inc. v. MasterCard Int'l Inc.*, 2017 WL 9482100, *9 n. 7 (E.D.N.Y., Mar. 6, 2017) (Recognizing that, "where a no-challenge provision appears in a settlement agreement," a party is contractually estopped from challenging validity) (citing to *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1367-68 (Defendant "agree[d] to a dismissal *with prejudice* following a settlement agreement that included a promise that [Defendant] would not challenge the validity of the '363 Patent. We hold that […] such a dismissal with prejudice and accompanying settlement agreement certainly gives rise to contractual estoppel of [Defendant's] challenge to the '363 patent's validity")) (emphasis in original)); *Times Mirror Magazines, Inc. v. Field & Stream License Co.*, 294 F.3d 383, 395 (2d Cir. 2002) ("[T]rademark agreements, in which two parties agree on their respective rights in a mark, are favored under the law")

These undisputed facts also establish that enforcing the No-Challenge Provision would further the public policies in favor in promoting judicial economy and maintaining finality to litigations, as well as holding parties to the terms of their bargained-for agreements. *See Suarez v. SCF Cedar, LLC*, 2016 WL 6601547, *1 (S.D.N.Y., Mar. 14, 2016) ("Settlement agreements to end litigation [like the Agreement] are strongly favored by courts […]"); *Flex-Foot, Inc.*, 238 F.3d at 1370 ("Upholding the terms of settlement agreements encourages [intellectual property] owners to agree to settlements and promotes judicial economy").

Accordingly, this Court should not permit ABC to waste the parties' and the Court's resources on re-litigating the issue of trademark functionality; instead, this Court should enforce the duly bargained-for No-Challenge Provision against ABC.

The foregoing notwithstanding, the parties agreed in their June 26 Letter to brief two specific questions, namely, whether the No-Challenge Provision estops ABC from asserting trademark functionality for: (i) the purpose of challenging the Pouch Trademark's validity, and (ii) purposes of this Court's infringement analysis.

## A. Questions Presented

As discussed *infra*, this Court should resolve both questions presented in Capri Sun's favor because: (i) the plain, unambiguous language of the No-Challenge Provision expressly prohibits ABC from directly challenging the Pouch Trademark's validity on functionality grounds, and (ii) asserting trademark functionality for purposes of this Court's infringement analysis would be nothing more than an indirect challenge to the Pouch Trademark's validity, which the No-Challenge Provision also expressly prohibits.

### 1. The No-Challenge Provision Estops ABC from Challenging the Pouch Trademark's Validity on Functionality Grounds

Regarding the first Question Presented, Capri Sun respectfully contends that the plain, unambiguous language of the No-Challenge Provision estops ABC from challenging the Pouch Trademark's validity on functionality grounds:

> "Faribault acknowledges the validity of the [Pouch] Trademark and covenants and agrees not to either directly or indirectly (a) challenge […] the validity of the [Pouch] Trademark […]." SUF at ¶¶ 76-7.

As discussed above, the '517 Registration, which covers the Pouch Trademark, is incontestable within the meaning of 15 U.S.C. 1115(b)(4). The validity of an incontestable mark is ordinarily subject to challenge on four, limited grounds, namely: (i) functionality; (ii) genericness; (iii) abandonment; and (iv) fraud. *See* 15 U.S.C. § 1064(3); *see also* 15 U.S.C. § 1115(b)(1), (2), (8) (*accord*); MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 7:84 (5th ed. 2019) ("In 1998, Congress added functionality to the list of possible challenges to the

validity of an incontestably registered mark"). However, as discussed above, the No-Challenge Provision, which survived ABC's termination the Agreement's termination, and ABC remains bound by, expressly prohibits ABC from "directly or indirectly (a) challeng[ing] [...] the validity of the [Pouch] Trademark." SUF at ¶¶ 76-7.

Accordingly, given that (i) the defense of trademark functionality is a direct challenge to the Pouch Trademark's validity, and (ii) the plain, unambiguous language of the No-Challenge Provision expressly prohibits direct challenges to the Pouch Trademark's validity, ABC cannot challenge the Pouch Trademark's validity on any ground, including functionality. *See, e.g.*, *HSW Enterprises, Inc. v. Woo Lae Oak, Inc.*, 2009 WL 4823920, *2 (S.D.N.Y., Dec. 15, 2009) (Former licensee estopped from challenging mark's validity because "[a] 'no-challenge' provision in a license agreement, such as the one in the parties' License Agreement, makes the estoppel clear and explicit").

### 2. The No-Challenge Provision Estops ABC from Asserting the Defense of Trademark Functionality for Purposes of this Court's Infringement Analysis

Regarding the Second Question Presented, Capri Sun respectfully contends that permitting ABC to assert trademark functionality for purposes of this Court's infringement analysis would constitute an indirect challenge to the Pouch Trademark's validity, which the No-Challenge Provision expressly prohibits. *See* SUF at ¶¶ 76-7.

The Court's infringement analysis consists of two steps, namely: (i) determining whether the Pouch Trademark is valid and entitled to protection, and (ii) determining whether ABC is using its pouch in a manner that is likely to cause confusion with the Pouch Trademark. *See, e.g.*, *Tiffany and Co. v. Costco Wholesale Corp.*, 127 F. Supp. 3d 241, 254 (S.D.N.Y. 2015). Trademark functionality plays no role in the Court's infringement analysis. *See discussion infra*.

Under the first step, as discussed *supra*, the '517 Registration is incontestable. Therefore, Capri Sun's Pouch Trademark is *conclusively* valid. *See also* 15 U.S.C. § 1115(b). As also discussed *supra*, the No-Challenge Provision estops ABC from directly challenging the Pouch Trademark's validity, including on functionality grounds. Accordingly, trademark functionality plays no role in the first step of the Court's infringement analysis.

Under the second step, "[i]n evaluating the likelihood of consumer confusion, courts in the Second Circuit adhere to the test articulated in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961) ('*Polaroid*'), in which the court laid out a number of factors by which the likelihood of confusion is measured." *Tiffany and Co.*, 241 F. Supp. 2d at 427. The *Polaroid* "factors include: the strength of the Plaintiff's mark; the degree of similarity between the Plaintiff's and Defendant's marks; the proximity of the products or services in the marketplace; evidence of actual confusion; the Defendant's good faith in adopting its own mark; the quality of the defendant's product; and the sophistication of the relevant population of consumers." *Id.*

Whether or not a plaintiff's mark is functional has no bearing on whether the balance of relevant *Polaroid* factors indicates that the *defendant* is engaging in conduct that is likely to cause consumer confusion. *See, e.g.*, *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 340 F. Supp. 2d 415, 440 (S.D.N.Y. 2004) (The court assessing functionality within the context of trademark validity, not within the context of the alleged likelihood of confusion); *Au-Tomotive Gold, Inc. v. Volkswagen of American, Inc.*, 457 F.3d 1062, 1074-75 (9th Cir. 2006) ("Although we conclude that Volkswagen and Audi's registered trademarks are not 'functional,' and thus are protectable, it remains to be determined whether Auto Gold is infringing those marks"). Accordingly, trademark functionality plays no role in the second step of the Court's infringement analysis.

In short, ABC asserting trademark functionality for purposes of the Court's infringement analysis would serve only one purpose, namely, to indirectly attack the Pouch Trademark's validity. However, as discussed *supra*, the plain, unambiguous language of the No-Challenge Provision prohibits indirect challenges to the Pouch Trademark's validity. Therefore, ABC cannot assert trademark functionality for purposes of the Court's infringement analysis.

## B. Remedies

In light of the No-Challenge Provision, Capri Sun respectfully contends that this Court should: (i) strike, pursuant to Rule 12(f)(1), all references to the Pouch Trademark's alleged functionality from ABC's Third and Ninth Affirmative Defenses, and (ii) enter a Protective Order, pursuant to Rule 26(c)(1)(D), directing that Capri Sun need not respond to ABC's Document Requests and Interrogatories that seek discovery on the issue of whether the Pouch Trademark is allegedly functional, as well as forbidding ABC from seeking any further discovery on, or otherwise inquiring into, the matter of (alleged) trademark functionality.

### 1. This Court Should Strike all Allegations Concerning the Pouch Trademark's Alleged Functionality from ABC's Third and Ninth Affirmative Defenses

To prevail on Rule 12(f) motion to strike, "the moving party must show that [i] no evidence in support of the allegations would be admissible; [ii] that the allegations have no bearing on the issues in the case; and [iii] that to permit the allegations to stand would result in prejudice to the movant." *Dan-Bunkering (America), Inc. v. Tecnologias Relacionadas Con Energie y Servicios Especializados, S.A. de C.V.*, 2019 WL 1877344, *3 (S.D.N.Y., April 26, 2019); *see also Icahn School of Medicine at Mount Sinai v. Neurocrine Biosciences, Inc.*, 243 F. Supp. 3d 470, 474-76 (S.D.N.Y. 2017) (Striking patent invalidity defense based on doctrine of licensee estoppel).

As discussed *supra*, ABC's Third and Ninth Affirmative Defenses include allegations that the Pouch Trademark is allegedly invalid on functionality grounds. However, in light of the No-

Challenge Provision, which, again, ABC (via Faribault) agreed to *after* dismissing its Counterclaims in the Prior S.D.N.Y Lawsuit with prejudice, ABC cannot challenge the Pouch Trademark's validity. *See discussion supra* at § IV.A.1; *see also Alexsam, Inc.*, 2017 WL 9482100 at *9 n. 7 (*accord*); and *Flex-Foot, Inc.*, 238 F.3d at 1367-68 (*accord*).

Because ABC is estopped from challenging the Pouch Trademark's validity, ABC cannot introduce evidence at trial in support of the allegations in its Third and Ninth Affirmative Defenses that the Pouch Trademark is allegedly invalid and not entitled to trademark protection because it is allegedly functional. *See, e.g.*, *Invisible Fences, Inc. v. Fido's Fences, Inc.*, 2014 WL 558672, *8-10 (E.D. Tenn., Feb. 11, 2014) (Granting *motion in limine* to preclude former licensee/defendant from introducing evidence at trial that challenged the validity of the mark-in-suit). Accordingly, this Court should strike those allegations pursuant to Rule 12(f)(1). *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (Allegations should be stricken as impertinent and immaterial when "no evidence in support of the allegation would be admissible"); *Kenall Manufacturing Co. v. Cooper Lighting, LLC*, 354 F. Supp. 3d 877, 888 (N.D. Ill. 2018) (granting motion to strike invalidity defense in light of no-challenge provision in prior Settlement and License Agreement); *SRAM, LLC v. Hayes Bicycle Group, Inc.*, 973 F. Supp. 2d 894, 905 (N.D. Ill. 2013) ("Because Hayes is bound by the terms of the Settlement Agreement, including the no-challenge provision, Hayes cannot challenge the validity of the '049 Patent, even as a defense to the present lawsuit"); *Pony Pal, LLC v. Claire's Boutique, Inc.*, 2006 WL 846354, *2 (S.D.N.Y., Mar. 31, 2006) (striking invalidity defense in light of licensee estoppel).

And because the No-Challenge Provision estops ABC from introducing evidence at trial in support of the allegations in its Third and Ninth Affirmative Defenses concerning the Pouch Trademark's alleged functionality, those allegations have no bearing on this case, and allowing

them to stand would prejudice Capri Sun. *See Icahn School of Medicine at Mount Sinai*, 243 F. Supp. 3d at 477 (granting motion to strike affirmative defenses and counterclaims concerning invalidity in light of licensee estoppel; holding the movant would suffer prejudice from the "delay and unnecessary expense" of having to litigate the issue of validity).

Based on the foregoing, this Court should strike, pursuant to rule 12(f)(1), all allegations from ABC's Third and Ninth Affirmative Defenses concerning the Pouch Trademark's alleged functionality. As discussed *infra*, this Court should also enter a Protective Order concerning functionality.

### 2. This Court Should Enter a Protective Order Concerning Functionality

This Court has broad discretion to set the contours of discovery under Rule 26(c). *See Dove v. Atlantic Capital Corp.*, 963 D.2d 15, 19 (2d Cir. 1992) ("The grant and nature of protection is singularly within the discretion of the district court […]") (internal citations omitted). "If the movant establishes good cause for protection, the court may balance the countervailing interests to determine whether to exercise [its] discretion and grant the [protective] order." *Hasbrouck v. BankAmerica Housing Services*, 187 F.R.D. 453, 455 (N.D.N.Y. 1999).

Here, good cause exists for entering a Protective Order concerning trademark functionality for at least two reasons.

First, as discussed *passim*, the No-Challenge Provision estops ABC from challenging the validity of the incontestable, conclusively valid Pouch Trademark. Accordingly, requiring Capri Sun to respond to ABC's outstanding discovery requests concerning functionality (*see* § II.D.2) would only annoy and harass Capri Sun, and cause it to incur unnecessary and undue expenses. *See Icahn School of Medicine at Mount Sinai*, 243 F. Supp. 3d at 477 (Defendant estopped from challenging validity of patent in suit; therefore, plaintiff would suffer prejudice in the form of "delay and 'unnecessary expense'" if defendant permitted to pursue invalidity defense).

Second, the discovery that ABC seeks concerning functionality is relevant only to the allegations in ABC's Affirmative Defenses that the Pouch Trademark is allegedly invalid and not entitled to trademark protection. *See discussion supra* at §§ IV.A, B; *see also Genese Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 145 n. 5 (2d Cir. 1997) (The Second Circuit holding "[t]o be a valid trademark, a mark must not only be source-denoting, but it must also be nonfunctional"); *Publications Intern., Ltd. v. Landoll, Inc.*, 164 F.3d 337, 340 (7th Cir. 1998) ("[R]egistration creates a presumption of validity, implying that the defendant has the laboring oar on all issues relating to validity, including functionality […]").

However, as discussed *supra*, this Court should strike those allegations in light of the No-Challenge Provision. In conjunction with doing so, this Court should also Order that Capri Sun does not have to respond to ABC's outstanding discovery concerning the issue of functionality, and preclude ABC from seeking any further discovery on the issue of functionality. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978) ("[I]t is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken"); *see also Paper Corp. of U.S. v. Schoeller Technical Papers, Inc.*, 759 F. Supp. 1039, 1048 (S.D.N.Y. 1991) (*accord*); *Chloe Shipping Corp. v. Mediterranean Shipping Co.*, 1999 WL 675985, *2 (S.D.N.Y., Aug. 30, 1999) (*accord*).

## C. The Agreement, and the No-Challenge Provision, are Valid and Enforceable

To the extent ABC argues in its opposition brief that it can assert the defense of trademark functionality and/or that Capri Sun is not entitled to a motion to strike or a protective order because the No-Challenge Provision is allegedly void as against public policy, ABC would be wrong. Indeed, as discussed *infra*, public policy *favors* enforcing the Agreement and the No-Challenge Provision against ABC for at least three reasons.

1. **Public Policy Strongly Favors Enforcing Settlement Agreements that Resolve Litigations, Like the Agreement**

*First*, the No-Challenge Provision is a section within the Agreement, which, as discussed *supra*, Faribault and Capri Sun duly executed (and the Term Sheet, for that matter) to resolve the Prior S.D.N.Y. Lawsuit. "Settlement agreements to end litigation [like the Agreement] are strongly favored by courts […]." *Suarez*, 2016 WL 6601547 at *1; *see also Williams v. First Nat. Bank*, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts […]." That is because "[u]pholding the terms of settlement agreements encourages [intellectual property] owners to agree to settlements and promotes judicial economy." *Flex-Foot, Inc.*, 238 F.3d at 1370; *see also Serby v. First Alert, Inc.*, 934 F. Supp. 2d 506, 514-15 (E.D.N.Y. 2013) (*accord*; *citing Flex-Foot, Inc. with approval*); *Alexsam, Inc.*, 2017 WL 9482100 at *9, n. 7 (*same*).

Accordingly, public policy favors *enforcing* the Agreement and No-Challenge Provision against ABC as a means of maintaining finality to the Prior S.D.N.Y. Lawsuit. *See Flex-Foot, Inc.*, 238 F.3d at 1370 ("Settlement agreements must be enforced if they are to remain effective as a means for resolving legal disagreements").

2. **Public Policy Favors Enforcing Trademark Agreements, Like the Agreement**

*Second*, the Agreement also included a non-exclusive trademark license agreement that governed Faribault and ABC's use of the Pouch Trademark. As the Second Circuit held in *Times Mirror Magazines, Inc.*, "trademark agreements, in which two parties agree on their respective rights in a mark, are favored under the law." 294 F.3d at 395. Accordingly, "in order to obtain rescission of a freely bargained trademark contract, a party must show that the public interest will be significantly injured if the contract is allowed to stand […]." *Id*. at 396 ("Simple fairness requires holding a party to its contract unless adhering to the contract will damage the public and not just a contracting party").

The public's interest in trademarks is avoiding a "threat to the 'health or safety' of the public by virtue of confusion." *DC Comics v. Kryptonite Corp.*, 336 F. Supp. 2d 324, 334 (S.D.N.Y. 2004). As a preliminary matter, the issue implicated by the No-Challenge Provision – trademark validity – is separate and distinct from the public's interest in avoiding confusion. For example, when consumers encounter juice beverages in the marketplace in the famous CAPRI SUN Pouch Trademark, they do not know whether the Pouch Trademark is valid. What they do know, however, is that the unique, iconic Pouch Trademark identifies Capri Sun as the source of the beverage offered under the Pouch Trademark. Accordingly, enforcing the Agreement and No-Challenge Provision against ABC would not affect, let alone injure, the public's interest in avoiding confusion.

Moreover, even if enforcing the Agreement and No-Challenge Provision affected the public's interest in avoiding confusion (*but see supra*), this Court should still enforce them against ABC. Indeed, as the Second Circuit recognized in *Idaho Potato Commission v. M&M Produce Farm & Sales*, the public policy in favor of enforcing contracts overrides the public's interest in avoiding confusion. 335 F.3d 130, 136 (2d Cir. 2003) (*citing with approval Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326, 329 (6th Cir. 1973) (Former licensee agreed to recognize validity of mark in perpetuity in written agreement; the Court holding "that the public interest in [trademarks] […] is not so great that it should take precedence over the rule of law of contracts that a person should be held to his undertakings"); and *MWS Wire Indus., Inc. v. California Fine Wire Co.*, 797 F.2d 799, 803 (9th Cir. 1986) (Defendant agreed in a prior agreement that the plaintiff's mark was valid; the court held that defendant could not subsequently challenge the mark because "[t]o permit CFW to reopen the question of validity of the trademark at this juncture would severely undercut the policy favoring the amicable resolution of trademark disputes without resorts to the

courts")); *see also* and *WGH Holdings, Inc. v. Greenberg*, 2008 WL 80932, *3 (S.D.N.Y., Jan. 8, 2008) ("While Defendants' use of the 'Seth Greenberg' mark may create some confusion in the marketplace, Plaintiffs have provided no evidence that it will compromise the public's health or safety. The November 1997 Agreement, releasing Defendants from trademark claims, is therefore enforceable").

Further, to the extent ABC argues that challenging the Pouch Trademark's validity on functionality grounds would promote the public's interest in competition, ABC's argument fails for at least two reasons. First, as the Second Circuit explained in *Idaho Potato*, competition is the public's interests in patents and certification marks – both of which are different from trademarks. *See Idaho Potato Commission*, 335 F.3d at 137-9. Second, enforcing the No-Challenge Provision against ABC would not stifle competition. Indeed, ABC's inability to challenge the Pouch Trademark's validity does not change the fact that third parties, including ABC, can use any pouch for beverages that they want to use – as long as those pouches do not create a likelihood of confusion with Capri Sun's famous Pouch Trademark, which is what ABC is doing, and what Capri Sun seeks to ameliorate with this lawsuit. Accordingly, ABC's competition argument "is misplaced." *Louis Vuitton Malletier*, 340 F. Supp. 2d at 440 ("Granting trademark protection to Louis Vuitton's Monogram Multicolore and Eye Love marks does not prevent Dooney & Bourke from using its own monogram in a spectrum of colors on its leather goods. Rather, it prohibits only the use of patterns so similar as to create a likelihood of confusion").

### 3. Public Policy Favors Enforcing No-Challenge Provisions After Parties Have Challenged, and Sought Discovery on, the Issue of Validity

*Third*, prior to executing the Term Sheet, the Agreement, *and* dismissing its Counterclaims in the Prior S.D.N.Y. Lawsuit with prejudice, Faribault (represented by competent counsel at the law firm of Paul Hastings LLP) had the opportunity to—*and did*: (i) challenge the Pouch

Trademark's validity on functionality grounds, and (ii) seek discovery on that issue. Based on these undisputed facts, this Court should not permit ABC to upend the No-Challenge Provision and re-litigate the issue of functionality in this lawsuit. The authority relied upon by ABC in its attempts to void the Agreement enforce this same conclusion. *See, e.g.*, *Rates Technology Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 172 (2d Cir. 2012) (The Second Circuit opining "[t]he fact that parties have conducted discovery [on validity] seems to us significant […]") (*citing with approval Flex-Foot, Inc.*, 238 F.3d at 1370:

> "Once an accused infringer has challenged patent validity, has had an opportunity to conduct discovery on validity issues, and has elected to voluntarily dismiss the litigation with prejudice under a settlement agreement containing a clear and unambiguous undertaking not to challenge validity and/or enforceability of the patent in suit, the accused infringer is contractually estopped from raising any such challenge in any subsequent proceeding."

## V.  CONCLUSION

Based on the foregoing, Capri Sun respectfully requests that this Court enter an Order:

(i) pursuant to FED. R. CIV. P. 12(f)(1), striking all references from ABC's Third and Ninth Affirmative Defenses to the Pouch Trademark's alleged functionality;

(ii) pursuant to FED. R. CIV. P. 26(c)(1)(D), that Capri Sun does not have to respond to Request Nos. 3, 9-16, 19, 40, 43, 44, 46, 73-90, 95, 98 113, 114, 115 in ABC's First Set of Document Requests; Interrogatory Nos. 5, 7, 9, 17, and 21 in ABC's First Set of Interrogatories; and Request Nos. 126, 128, 129, 130, 131, 132, 133, and 137 in ABC's Second Set of Document Requests;

(iii) pursuant to FED. R. CIV. P. 26(c)(1)(D), forbidding ABC from seeking any additional discovery on, or otherwise inquiring into, the matter of whether the Pouch Trademark is allegedly functional; and

(iv) awarding Capri Sun any further relief that this Court deems just and equitable (including, for example, Capri Sun's attorneys' fees incurred in connection with the instant briefing).

Dated: July 16, 2019
      New York, New York

Respectfully submitted,

*/s/ A. John P. Mancini*
A. John P. Mancini
Allison Stillman
Jonathan W. Thomas
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020-1001
Tel.: (212) 506 2500
Fax: (212) 262 1910
Email: JMancini@mayerbrown.com
Email: AStillman@mayerbrown.com
Email: JWThomas@mayerbrown.com

*Attorneys for Plaintiff Capri GmbH*

## CERTIFICATE OF SERVICE

I hereby certify that, on July 16, 2019, I filed a true and correct copy of the foregoing document, titled *Memorandum of Law in Support of Plaintiff Capri Sun GmbH's Motion to Strike and for a Protective Order*, using this Court's Electronic Case-Filing System, which will transmit notification of such filing to Defendant American Beverage Corporation's counsel of record, at:

Joshua C. Krumholz
Mark T. Goracke
HOLLAND AND KNIGHT LLP
10 Saint James Avenue, 11th Floor
Boston, Massachusetts 02116
joshua.krumholz@hklaw.com
mark.goracke@hklaw.com

Dawn Rudenko Albert
HOLLAND AND KNIGHT LLP
One Stamford Plaza
263 Tresser Boulevard, Suite 1400
Stamford, Connecticut 06901
dawn.rudenko@hklaw.com

*/s/ A. John P. Mancini*
A. John P. Mancini

*Attorney for Plaintiff Capri Sun GmbH*