IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPRI SUN GMBH,<br><br>        Plaintiff,<br><br>vs.<br><br>AMERICAN BEVERAGE CORPORATION,<br><br>        Defendant. | Civil Action No.: 19 Civ. 1422 (PAE) |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF CAPRI SUN GMBH'S MOTION TO STRIKE AND FOR A PROTECTIVE ORDER

**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020-1001
Tel.: (212) 506 2500
Fax: (212) 262 1910

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | ANALYSIS | 2 |
|  | A. ABC Failed to Rebut Capri Sun's Argument That the No-Challenge Provision Estops ABC from Challenging the Pouch Trademark's Validity on Functionality Grounds | 3 |
|  | B. ABC Failed to Rebut Capri Sun's Argument That the No-Challenge Provision Estops ABC from Asserting Functionality Under the Court's Infringement Analysis | 7 |
| III. | CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexsam, Inc. v. MasterCard Int'l Inc.*,
 2017 WL 9482100 (E.D.N.Y., Mar. 6, 2017) ................................................................. 4

*Beer Nuts, Inc. v. King Nut Co.*,
 477 F.2d 326 (6th Cir. 1973) ......................................................................................... 5

*Brandir Int'l., Inc. v. Cascade Pac. Lumber Co.*,
 834 F.2d 1142 (2d Cir. 1987) ....................................................................................... 10

*Canon Inc. v. Tesseron Ltd.*,
 115 F. Supp. 3d 391 (S.D.N.Y. 2015) ............................................................................ 6

*Can't Live Without It, LLC v. ETS Express, Inc.*,
 287 F. Supp. 3d 400 (S.D.N.Y. 2018) ............................................................................ 9

*Christian Louboutin S.A. v. Yves St. Laurent Am. Holdings, Inc.*,
 696 F.3d 206 (2d Cir. 2012) ......................................................................................... 10

*Fabrication Enter., Inc. v. Hygenic Corp.*,
 64 F.3d 53 (2d Cir. 1995) ............................................................................................. 10

*Flex-Foot, Inc. v. CRP, Inc.*,
 238 F.3d 1362 (Fed. Cir. 2001) ................................................................................. 4, 7

*Idaho Potato Comm'n v. M & M Produce Farm & Sales*,
 335 F.3d 130 (2d Cir. 2003) ................................................................................. 3, 4, 5

*In re UBS AG Secs. Litig.*,
 2012 WL 4471265 (S.D.N.Y., Sept. 28, 2012) ............................................................ 10

*Jeffrey Millstein, Inc. v. Greger, Lawlow, Roth, Inc.*,
 58 F.3d 27 (2d Cir. 1995) ............................................................................................. 10

*Lear, Inc. v. Adkins*,
 395 U.S. 653 (1969) ............................................................................................. 3, 4, 5

*LeSportsac, Inc. v. K mart Corp.*,
 754 F.2d 71 (2d Cir. 1985) .......................................................................................... 10

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
 340 F. Supp. 2d 415 (S.D.N.Y. 2004) ................................................................ 6, 8, 10

*Malaco Leaf, AB v. Promotion in Motion, Inc.*,
    287 F. Supp. 2d 355 (S.D.N.Y. 2003) ................................................................. 10

*MWS Wire Indus., Inc. v. California Fine Wire Co.*,
    797 F.2d 799 (9th Cir. 1986) ............................................................................... 5

*Nora Beverages, Inc. v. Perrier Group of America, Inc.*,
    269 F.3d 114 (2d Cir. 2001) ............................................................................... 10

*Peparlet Co., Ltd. Shepherd Specialty Papers, Inc.*,
    2013 WL 2151636 (N.D. Ohio, May 16, 2013) .................................................. 7

*Qualitex Co. v. Jacobson Prods. Co.*,
    514 U.S. 159 (1995) ........................................................................................... 10

*Rates Tech. Inc. v. Speakeasy, Inc.*,
    685 F.3d 163 (2d Cir. 2012) ............................................................................ 6, 7

*SCF Cedar, LLC*,
    2016 WL 6601547 (S.D.N.Y., Mar. 14, 2016) ..................................................... 2

*Stormy Clime Ltd. v. ProGroup, Inc.*,
    808 F.2d 971 (2d Cir. 1987) ............................................................................ 9, 10

*Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*,
    103 F. Supp. 2d 711 (S.D.N.Y. 2000) ................................................................. 4

*Times Mirror Magazines, Inc. v. Field & Stream License Co.*,
    294 F.3d 383 (2d Cir. 2002) ............................................................................ 2, 4

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
    532 U.S. 23 (2001) .............................................................................................. 9

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992) ............................................................................................ 9

*Victorinox AG v. B&F Sys., Inc.*,
    709 Fed.Appx. 44 (2d Cir. 2017) ........................................................................ 8

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
    529 U.S. 205 (2000) ............................................................................................ 9

*Western Bulk Carriers KS v. Centauri Shipping Ltd.*,
　2013 WL 1385212 (S.D.N.Y., Mar. 11, 2013) ...................................................................10

*Wilhelm Pudenz, GmbH v. Littlefuse, Inc.*,
　177 F.3d 1204 (11th Cir. 1999) ........................................................................................10

*Yurman Design, Inc. v. PAJ, Inc.*,
　262 F.3d 101 (2d Cir. 2001)................................................................................................9

**Statutes**

15 U.S.C. 1115...........................................................................................................................8, 9

**Other Authorities**

FED. R. CIV. P. 12(f)(1) .................................................................................................................10

FED. R. CIV. P. 26(c)(1)(D) ...........................................................................................................10

5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 18:63 (5th ed. 2019).......................5

I.   PRELIMINARY STATEMENT

ABC's Opposition (Dkt. 42; "Opposition") failed to rebut what Capri Sun argued in its Opening Brief (Dkt. 40): ABC cannot assert trademark functionality for purposes of challenging the validity of Capri Sun's famous Pouch Trademark *or* this Court's infringement analysis.

Trademark functionality is a challenge to a mark's validity. As discussed in Capri Sun's Opening Brief, the plain, unambiguous language of the No-Challenge Provision in the parties' trademark-litigation Settlement and License Agreement ("Agreement") expressly prohibits ABC from challenging the Pouch Trademark's validity. Moreover, whether the Pouch Trademark is functional (it is not) has no bearing on whether ABC's infringing pouch creates a likelihood of consumer confusion in the marketplace with the Pouch Trademark (it does). What is more, ABC's predecessor-in-interest, Faribault Foods, Inc. ("Faribault"), executed the Agreement after challenging the Pouch Trademark's validity in a prior litigation, and seeking extensive discovery on that issue. Accordingly, consistent with the public policies in favor of enforcing litigation-settlement agreements and trademark-license agreements – the Agreement is *both* – this Court should enforce the No-Challenge Provision against ABC; strike the trademark-functionality allegations from ABC's Affirmative Defenses; and issue a Protective Order on functionality.

ABC's Opposition does not address Capri Sun's request for these latter two remedies, thereby conceding Capri Sun's entitlement to both. ABC's Opposition also does not cite a single case where a court invalidated a no-challenge provision in a litigation-settlement-and-trademark-license agreement, like the Agreement. Instead, ABC argues that this Court should invalidate the No-Challenge Provision for two reasons. Both arguments fail.

First, ABC, seeking to play private attorney-general, argues that challenging the Pouch Trademark's validity on functionality grounds would further the public's interest in competition, and that this interest allegedly outweighs the public policies in favor of enforcing litigation-

1

settlement-and-trademark-license agreements, like the Agreement. ABC's argument ignores that Capri Sun brought this lawsuit to ameliorate the likelihood of consumer confusion that ABC is causing by using a nearly identical pouch for its beverage products, *not* stifle competition. Second, ABC argues that Faribault did not have a meaningful opportunity to assess the Pouch Trademark's validity before agreeing to the No-Challenge Provision. That is false. Faribault, represented by competent counsel at Paul Hastings LLP: (i) agreed to stay all discovery; (ii) executed the Agreement; and (iii) voluntarily dismissed its counterclaims with prejudice, wherein it challenged the Pouch Trademark's validity on functionality grounds, *after* seeking extensive discovery on trademark functionality. ABC's case law confirms that the No-Challenge Provision is valid and enforceable based on these facts.

## II. ANALYSIS

As discussed in Capri Sun's Opening Brief (at 12-14, 20-24), public policy favors enforcing litigation-settlement agreements, and trademark-license agreements; the Agreement is both. *See also Suarez v. SCF Cedar, LLC*, 2016 WL 6601547, *1 (S.D.N.Y., Mar. 14, 2016) (Litigation-settlement agreements are "strongly favored by courts […]"); *Times Mirror Magazines, Inc. v. Field & Stream License Co.*, 294 F.3d 383, 395 (2d Cir. 2002) (Trademark-license agreements "are … favored … under the law"). ABC does not cite a single decision where a court invalidated a no-challenge provision in either type of agreement. *See generally* Opposition. Nonetheless, the parties agreed to brief, and the Court held that it was "prepared to proceed to adjudicate" (Dkt. 32 at 8), whether the No-Challenge Provision estops ABC from asserting trademark functionality for: (i) for the purpose of challenging the Pouch Trademark's validity, and (ii) for purposes of this Court's infringement analysis (the "Questions Presented"). *See* Dkt. 31 at 3. It does.

### A. ABC Failed to Rebut Capri Sun's Argument that the No-Challenge Provision Estops ABC From Challenging the Pouch Trademark's Validity on Functionality Grounds

As discussed in Capri Sun's Opening Brief, the affirmative defense of trademark functionality is a direct challenge to a mark's validity. *See* Opening Brief at 14-15. As also discussed therein, the No-Challenge Provision's plain, unambiguous language expressly prohibits ABC from "directly or indirectly (a) challeng[ing] […] the validity of the [Pouch] Trademark […]." *Id*. at 14. These undisputed facts lead to only one conclusion: the No-Challenge Provision estops ABC from challenging the Pouch Trademark's validity on functionality grounds. Accordingly, the Court should resolve the First Question Presented in Capri Sun's favor.

Nonetheless, as Capri Sun anticipated (Opening Brief at 20), ABC argues that it can challenge the Pouch Trademark's validity on functionality grounds because the No-Challenge Provision is allegedly invalid. As a preliminary matter, ABC fails to cite a single decision where a court invalidated a no-challenge provision contained in a litigation-settlement-and-trademark-license agreement, like the Agreement. *See generally* Opposition. This warrants reimbursing Capri Sun's attorneys' fees. Instead, ABC argues that the public's interest in discovering allegedly invalid trademarks outweighs the public policies in favor of enforcing the Agreement. ABC also argues that Faribault did not have a sufficient opportunity to assess the Pouch Trademark's validity in the Prior S.D.N.Y. Lawsuit (*see discussion* at Opening Brief, pgs. 3-8) before agreeing to the No-Challenge Provision and dismissing its counterclaims with prejudice. Both arguments fail.

In support of ABC's first argument, it relies on *Idaho Potato Comm'n v. M & M Produce Farm & Sales*, 335 F.3d 130 (2d Cir. 2003) and *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969) to support the proposition that a "*Lear*" balancing test allegedly weighs in favor of invalidating the No-Challenge Provision. *See* Opposition at 9-10. ABC is wrong.

A "*Lear*" balancing test is what courts sometimes use to determine whether a no-challenge provision in an agreement estops a former licensee from launching a validity challenge in a subsequent dispute. To perform a *Lear* balancing test, courts balance the public interest that a validity challenge would serve against the public policy in favor of enforcing contracts. *See Lear, Inc.,* 395 U.S. at 674; *see also Idaho Potato Comm'n*, 335 F.3d at 135. Critical distinctions between *Idaho Potato* and *Lear* render a *Lear* balancing test inappropriate in this case.

Unlike this case, neither *Lear* nor *Idaho Potato* involved a no-challenge provision within a litigation-settlement agreement, like the Agreement. This is a critical distinction. As discussed in Capri Sun's Opening Brief (at 13, 20-23), and *supra*, public policy strongly favors enforcing agreements that resolve litigation – including no-challenge provisions therein. *See also Idaho Potato Comm'n*, 335 F.3d at 136, n. 6 (citing *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 103 F. Supp. 2d 711, 738, 740 (S.D.N.Y. 2000) ([T]he strong public interest in the judicial policy of encouraging extra-judicial settlement of trademark litigation also weighs in favor of enforcing the parties' agreements") *aff'd Times Mirror Magazines, Inc.*, 294 F.3d at 384); *Alexsam, Inc. v. MasterCard Int'l Inc.*, 2017 WL 9482100, *9 n. 7 (E.D.N.Y., Mar. 6, 2017) (Contractual estoppel applies when "a no-challenge provision appears in litigation-settlement agreement") (citing *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1369 (Fed. Cir. 2001) (*accord*)).

Unlike this case, neither *Lear* nor *Idaho Potato* involved a trademark, let alone a no-challenge provision within a trademark-license agreement, like the Agreement. *Idaho Potato* involved a certification mark; *Lear* involved a patent. This, too, is a critical distinction. Certification marks protect the public's interest "in free and open competition among producers and distributors of the certified product," which "appears to us [the Second Circuit] is akin to the public interest in the 'full and free use of ideas in the public domain in the patent laws.'" *Idaho*

*Potato Comm'n*, 355 F.3d at 138-39 (quoting *Lear, Inc.*, 395 U.S. at 674.) The public's interest in trademarks, on the other hand, is avoiding confusion about the source or origin of goods and services. *See id*. at 136. As the Second Circuit held in *Idaho Potato*, "courts [in the trademark-licensing context] have generally precluded licensees from challenging the validity of a mark they have obtained the right to use […] after considering the public interest in trademarks." *Id*. (citing to *Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326, 329 (6th Cir. 1973), and *MWS Wire Indus., Inc. v. California Fine Wire Co.*, 797 F.2d 799, 803 (9th Cir. 1986)).

Based on the foregoing, Capri Sun contends that a *Lear* balancing test is not appropriate in this case. *See also* 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 18:63 (5th ed. 2019) ("The *Lear* policy is even more clearly outweighed by an agreement settling litigation in which a party agrees not to challenge trademark validity"). Nonetheless, ABC contends that a *Lear* balancing tests weighs in favor of invalidating the No-Challenge Provision because challenging the Pouch Trademark's validity on functionality grounds would allegedly further the public's interest in competition, and furthering the public's interest in competition allegedly outweighs the aforementioned public policies that favor enforcing the Agreement and No-Challenge Provision therein. *See* Opposition at 9-20. ABC is wrong for at least two reasons.

First, as Capri Sun explained in its Opening Brief (at 23), it is not seeking to enforce its rights in the *conclusively valid and non-functional* Pouch Trademark against ABC – or anyone else – to stifle competition or monopolize pouch designs. On the contrary, Capri Sun is seeking to enforce its rights against ABC to further *the* purpose of trademark law: to prevent consumer confusion about the source of ABC's infringing pouches. Second, as Capri Sun also explained in its Opening Brief (at 23), even if this Court prohibits ABC from launching a functionality challenge, the public – including ABC – could still use any pouch for beverages they wanted to

use – as long as those pouches do not create a likelihood of confusion with Capri Sun's famous Pouch Trademark. *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 340 F. Supp. 2d 415, 440 (S.D.N.Y. 2004) ("Granting trademark protection to Louis Vuitton's [allegedly functional design mark] prohibits only the use of patterns so similar as to create a likelihood of confusion"). Accordingly, permitting ABC to launch a functionality challenge[1] would not serve the public's interest in promoting competition. What it would do, though, is flout the public policies that favor enforcing the Agreement. This Court should not allow that to happen; instead, it should enforce the No-Challenge Provision against ABC.

In support of ABC's second argument that the No-Challenge Provision is allegedly invalid, ABC relies on *Rates Tech., Inc. v. Speakeasy, Inc.*, 685 F.3d 163 (2d Cir. 2012). ABC's reliance on *Rates* is misplaced for at least two reasons. First, the no-challenge provision in *Rates* was in a *pre-litigation* agreement. *See Rates Tech. Inc.*, 685 F.3d at 172; *see also Canon Inc. v. Tesseron Ltd.*, 115 F. Supp. 3d 391, 393-94 (S.D.N.Y. 2015) (a case on which ABC relies; the no-challenge provision appearing in a pre-litigation agreement). That is *not* the case here. As discussed *passim*, the No-Challenge Provision is the Agreement, which Capri Sun and ABC (via Faribault) duly executed to settle the Prior S.D.N.Y. Lawsuit. As also discussed *passim*, public policy strongly favors enforcing litigation-settlement agreements, like the Agreement.

Second, as discussed in Capri Sun's Opening Brief (at 3-8), Faribault challenged the Pouch Trademark's validity on functionality grounds in the Prior S.D.N.Y. Lawsuit in its affirmative defenses and counterclaims, *and* sought extensive discovery on that issue before: (i) signing the

---

[1] ABC argues that the expired '646 Patent is evidence of the Pouch Trademark's alleged functionality. *See* Opposition at 2; 4, n. 3; 14-15. ABC's argument is a red herring designed to distract from the fact that the parties are *not* briefing whether the Pouch Trademark is allegedly functional (it is not). As such, this Court should reject out of hand all of ABC's arguments concerning the Pouch Trademark's alleged functionality. *See id.*; *id.* at 1, 3, 5-6. Nonetheless, Capri Sun notes that ABC is wrong in claiming that the Pouch Trademark is the "very same design" as the pouch that the '646 Patent covered. *Id.* at 2, 15. The Pouch Trademark is wider at the top than the bottom; the pouch that the '646 Patent covered was wider at the bottom than the top. *Compare id.* at 5 *with id.* at 4 (Fig. 2); *see also id.* at 15.

6

Final Settlement Term Sheet, wherein it agreed to the No-Challenge Provision *and* agreed to dismiss its counterclaims with prejudice; (ii) "fil[ing] a joint letter motion with the Court, seeking to stay the then-current Discovery Schedule for 60 days (ECF No. 31-1 at ¶¶ 74, 82); (iii) duly executing the Agreement, which contained the No-Challenge Provision; and then (iv) voluntarily dismissing its counterclaims with prejudice.

If ABC believes that Faribault should have pursued discovery on functionality with more vigor in the Prior S.D.N.Y. Lawsuit, then ABC can discuss that with Faribault and Faribault's prior counsel. More to the point, though, the *opportunity* to seek discovery on the issue of validity in a prior lawsuit is what matters – and that is precisely what Faribault had. *See Rates Tech. Inc.*, 685 F.3d at 172 (referencing *Flex-Foot*, 238 F.3d at 1370 (No-challenge provision in litigation-settlement agreement enforceable; defendant "had an opportunity to conduct discovery on validity issues, and [] elected to voluntarily dismiss the litigation with prejudice under a settlement agreement containing a clear and unambiguous" no-challenge provision)); *see also Peparlet Co., Ltd. Shepherd Specialty Papers, Inc.*, 2013 WL 2151636, *3 (N.D. Ohio, May 16, 2013) (*same*; "*Flex-Foot* only required litigation to be initiated, thereby providing an opportunity for the challenger to conduct discovery on validity issues").

Based on the foregoing, this Court should enforce the No-Challenge Provision against ABC, and not permit it to challenge the Pouch Trademark's validity on functionality grounds (the First Question Presented).

**B. ABC Failed to Rebut Capri Sun's Argument That the No-Challenge Provision Estops ABC From Asserting Functionality Under the Court's Infringement Analysis**

This Court also should not permit ABC to assert trademark functionality for purposes of the Court's infringement analysis (the Second Question Presented). As Capri Sun discussed in its Opening Brief (at 15), this Court's infringement analysis includes two prongs, namely:

7

(i) trademark validity and protectability, and (ii) likelihood of confusion under the *Polaroid* factors. Under the first prong, because Capri Sun's '517 Registration is incontestable, the Pouch Trademark is *conclusively* valid and non-functional. *See* 15 U.S.C. § 1115(b). In the absence of the No-Challenge Provision, the burden would shift to ABC to prove functionality. *See id.*; *see also Victorinox AG v. B&F Sys., Inc.*, 709 Fed.Appx. 44, 47-8 (2d Cir. 2017) (Analyzing affirmative defense of trademark functionality in the Sections of the opinion titled "A. First Stage […] 1. Fraud […] 2. Functionality"). *However*, as discussed *passim*, the No-Challenge Provision expressly prohibits ABC from doing so. Under the second prong, as discussed in Capri Sun's Opening Brief (at 15-7), trademark functionality has no bearing on whether ABC's infringing pouch creates a likelihood of consumer confusion with Capri Sun's Pouch Trademark. *See also Victorinox AG*, 709 Fed.Appx. at 49 (Analyzing likelihood of confusion without mentioning functionality in the Section of the opinion titled "B. Second Stage" [2]).

Based on the foregoing, and as Capri Sun argued in its Opening Brief (at 15-7), trademark functionality plays no role in the Court's infringement analysis in this case. ABC's Opposition fails to rebut Capri Sun's argument for at least two reasons.

First, ABC claims that Capri Sun attempted to mislead this Court about the nature of its infringement analysis by allegedly addressing only word-mark cases in its Opening Brief. *See* Opposition at 20-21. That is false. In Capri Sun's Opening Brief (at 16), it cited *Louis Vuitton Malletier* – a *design* mark case –where the court's infringement analysis consisted of the same two steps that Capri Sun identified in its Opening Brief (at 15): (i) validity and protectability, and (ii) likelihood of confusion. *See also Louis Vuitton Malletier*, 340 F. Supp. 2d at 440-48.

---

[2] The Second Circuit stated "[f]unctionality is an affirmative defense that the Court considers in the context of determining whether the infringing use of the trademark is likely to cause consumer confusion." *Victorinox AG*, 709 Fed.Appx. at 48. However, as quoted above, the court analyzed functionality in conjunction with validity and protectability, *not* likelihood of confusion.

8

Second, ABC relies on *Stormy Clime Ltd. v. ProGroup, Inc.*, 808 F.2d 971 (2d Cir. 1987) to support the position that, because the Pouch Trademark concerns a design, "functionality *must* be considered in performing a proper infringement analysis." Opposition at 21 (emphasis in original). ABC's reliance on *Stormy Clime* is misplaced. Unlike this case, *Stormy Clime* did not involve a no-challenge provision within a litigation-settlement-and-trademark-license agreement, like the Agreement. Unlike this case, *Stormy Clime* also did not involve a claim under § 32 of the Lanham Act for infringement of a registered, incontestable mark; *Stormy Clime* involved a claim under § 43(a) of the Lanham Act for *unregistered trade dress*. *See Stormy Clime Ltd*, 808 F.2d at 974. As ABC's case law confirms, this is a critical distinction. On a § 43(a) claim, the *plaintiff* must prove non-functionality. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992) ("[E]ligibility for protection under § 43(a) depends on nonfunctionality"); *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000); *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29-32 (2001); and *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001) (*accord all*). However, on a § 32 claim, the *defendant* must prove functionality (which the No-Challenge Provision estops ABC from attempting to do in this case). *See* 15 U.S.C. § 1115(b)(8); *Can't Live Without It, LLC v. ETS Express, Inc.*, 287 F. Supp. 3d 400, 406 (S.D.N.Y. 2018).

*Stormy Clime* – and ABC's additional case law, *none* of which involved a no-challenge provision within a litigation-settlement-and-trademark-license agreement, like the Agreement – also confirms what Capri Sun argued in its Opening Brief (at 15-7): trademark functionality concerns validity and protectability (the first prong), not likelihood of confusion (the second prong). *See Stormy Clime Ltd.*, 809 F.2d at 976-77 (The "purpose [of] the Lanham Act [is to] prevent[] confusion as to the source of products," whereas the purpose of the affirmative defense of trademark functionality is to assess whether "bestowing trade dress <u>*protection*</u> upon [product]

9

features will hinder competition or impinge upon the rights of others to compete effectively in the sale of goods") (emphasis added)[3]; *see also Louis Vuitton Malletier*, 340 F. Supp. 2d at 440 (Rejecting defendant's functionality argument while discussing trademark validity). Nonetheless, as discussed *passim*, trademark validity and protectability are not at issue in this case because the No-Challenge Provision estops ABC from attempting to rebut the Pouch Trademark's conclusive validity and non-functionality.

Based on the foregoing, the Court should resolve the Second Question Presented in Capri Sun's favor, and not permit ABC to assert trademark functionality under the infringement analysis.

## III. CONCLUSION

For the reasons discussed herein, and discussed in Capri Sun's Opening Brief (at 17-20, 24), the No-Challenge Provision warrants this Court: (i) striking, pursuant to FED. R. CIV. P. 12(f), the allegations in ABC's Affirmative Defenses concerning the Pouch Trademark's alleged functionality, and (ii) entering a Protective Order, pursuant to FED. R. CIV. P. 26(c), concerning trademark functionality. ABC does not address, let alone oppose, Capri Sun's request for either remedy. *See generally* Opposition. Accordingly, ABC has conceded Capri Sun's entitlement to both remedies, and this Court should award them to Capri Sun, as well as any further relief that this Court deems just and equitable (including, for example, Capri Sun's attorneys' fees). *See, e.g.*, *Western Bulk Carriers KS v. Centauri Shipping Ltd.*, 2013 WL 1385212, *4 n. 4 (S.D.N.Y., Mar. 11, 2013) ("[A] party 'concedes through silence' arguments by its opponent that it fails to address") (quoting *In re UBS AG Secs. Litig.*, 2012 WL 4471265, *11 (S.D.N.Y., Sept. 28, 2012)).

---

[3] *See also Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 169 (1995); *LeSportsac, Inc. v. K mart Corp.*, 754 F.2d 71, 75 (2d Cir. 1985); *Brandir Int'l., Inc. v. Cascade Pac. Lumber Co.*, 834 F.2d 1142, 1148 (2d Cir. 1987); *Fabrication Enter., Inc. v. Hygenic Corp.*, 64 F.3d 53, 58 (2d Cir. 1995); *Jeffrey Millstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 30-31 (2d Cir. 1995); *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 269 F.3d 114, 120 n. 4 (2d Cir. 2001); *Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355, 365-68 (S.D.N.Y. 2003); *Christian Louboutin S.A. v. Yves St. Laurent Am. Holdings, Inc.*, 696 F.3d 206, 218-9 (2d Cir. 2012); *Wilhelm Pudenz, GmbH v. Littlefuse, Inc.*, 177 F.3d 1204, 1211 (11th Cir. 1999) (*accord all*).

Dated: July 30, 2019
   New York, New York

Respectfully submitted,

*/s/ A. John P. Mancini*
A. John P. Mancini
Allison Stillman
Jonathan W. Thomas
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020-1001
Tel.: (212) 506 2500
Fax: (212) 262 1910
Email: JMancini@mayerbrown.com
Email: AStillman@mayerbrown.com
Email: JWThomas@mayerbrown.com

*Attorneys for Plaintiff Capri GmbH*

# CERTIFICATE OF SERVICE

  I hereby certify that, on July 30, 2019, I filed a true and correct copy of the foregoing document, titled *Reply Memorandum of Law in Further Support of Plaintiff Capri Sun GmbH's Motion to Strike and for a Protective Order*, using this Court's Electronic Case-Filing System, which will transmit notification of such filing to Defendant American Beverage Corporation's counsel of record, at:

Joshua C. Krumholz
Mark T. Goracke
HOLLAND AND KNIGHT LLP
10 Saint James Avenue, 11th Floor
Boston, Massachusetts 02116
joshua.krumholz@hklaw.com
mark.goracke@hklaw.com

Dawn Rudenko Albert
HOLLAND AND KNIGHT LLP
One Stamford Plaza
263 Tresser Boulevard, Suite 1400
Stamford, Connecticut 06901
dawn.rudenko@hklaw.com

          */s/ A. John P. Mancini*
          A. John P. Mancini

          *Attorney for Plaintiff Capri Sun GmbH*