UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CAPRI SUN GMBH,

                Plaintiff,

-v-

AMERICAN BEVERAGE CORPORATION,

                Defendant.

19 Civ. 1422 (PAE) (VF)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

In this trademark dispute over the shape of fruit juice pouches, this Court has recently resolved cross-motions for summary judgment. The decision leaves to be resolved at trial the central claim—for trademark infringement under the Lanham Act—brought by plaintiff Capri Sun GmbH ("Capri Sun") against defendant American Beverage Corporation ("ABC"). *See* Dkt. 180 ("SJ Op.").

The parties have now each moved, under 28 U.S.C. § 1292(b), for an order certifying an issue for an interlocutory appeal to the Second Circuit. Capri Sun asks the Court to certify the question whether, as the Court held, the licensing agreement between the parties precludes Capri Sun from recovering, on its Lanham Act claims, ABC's profits as direct damages. ABC asks the Court, if it certifies that question, to also certify the question whether, as the Court held, the agreement is enforceable insofar as it precludes ABC's defense that Capri Sun's Trademark, USPTO Reg. No. 1,418,517, is functional.

For the reasons that follow, the Court denies Capri Sun's motion, and therefore denies ABC's conditional motion as moot.

## I. Relevant Background

The Court here only sets forth the background relevant to the instant motions.[1]

### A. Factual Background

Capri Sun holds a registered trademark for its metal foil pouch containing fruit juice. ABC manufactures, *inter alia*, foil juice pouches of its own. On July 1, 2016, Capri Sun and ABC's predecessor-in-interest, Faribault Foods, Inc. ("Faribault"), settled a trademark dispute over a pouch similarly shaped to the one at issue in this litigation. As part of that settlement, Faribault and Capri Sun entered the settlement and license agreement ("SLA") at issue here. Under the SLA, Capri Sun licensed the right to manufacture its pouches to Faribault, and later ABC. In November 2017, ABC began manufacturing and selling pouches that, although not identical to the ones licensed to it under the SLA, were, in Capri Sun's view, confusingly similar to its pouches, in violation of the Lanham Act, in violation of New York common law, and in breach of the SLA. On March 26, 2018, ABC noticed Capri Sun of its intention to terminate the SLA. On July 26, 2018, that termination became effective.

Certain provisions survived the termination of the SLA. Two are relevant to the instant motions. Section 6.3 provides: "Faribault acknowledges the validity of the [Pouch] Trademark and covenants and agrees not to either directly or indirectly (a) challenge or contest, or assist in the challenging or contesting, of the validity, enforceability or ownership of the [Pouch] Trademark." Dkt. 51 ("Functionality Order") at 8. And section 8.4 provides: "[I]n no event shall any Party . . . be liable to the other Party . . . for any consequential, indirect, punitive, incidental or special damages, including lost profits . . . arising from any cause of action

---

[1] Unless otherwise noted, the facts in this section are drawn from this Court's summary judgment opinion. *See* SJ Op. at 1–18.

whatsoever, including those based upon contract, warranty, strict liability or negligence, related to this agreement or any breach hereof."

## B.     Procedural Background

On February 14 and 15, 2019, Capri Sun filed the Complaint, Dkt. 4. On March 11, 2019, ABC answered. Dkt. 14.

On July 16, 2019, Capri Sun filed a motion to strike ABC's affirmative defenses and discovery requests relating to the functionality of the Pouch Mark, in light of the no-challenge provision in the SLA. Dkts. 39–41 ("Motion to Strike"). In a decision issued October 29, 2019, after briefing, Dkts. 42, 44, and argument, Dkt. 46, the Court granted the motion, striking all references to the Pouch Trademark's alleged functionality from ABC's affirmative defenses and precluding discovery requests as to functionality. *See* Functionality Order. On September 29, 2020, fact discovery closed; and on February 8, 2021, expert discovery closed. *See* Dkts. 48, 55, 59, 65. On March 15, 2021, the Court set a briefing schedule for the parties' cross-motions for summary judgment. Dkts. 74, 83. On July 15, 2021, the motions were fully briefed. *See* Dkts. 146, 153. On March 31, 2022, the Court issued an opinion and order, denying in part and granting in part ABC's motion, and denying Capri Sun's motion in full. SJ Op.

On June 30, 2022, Capri Sun moved for leave to file an interlocutory appeal and filed a memorandum of law and a declaration in support. Dkts. 219, 220 ("Capri Sun Mot."), 221. On July 7, 2022, ABC conditionally moved for leave to file an interlocutory appeal and filed a memorandum of law in support. Dkts. 224, 225 ("ABC Mot."). On July 28, 2022, the motions became fully briefed. Dkt. 232.

## II. Discussion

### A. The Parties' Applications for Interlocutory Appeal

Capri Sun has moved to certify the following question (the "§ 8.4 Issue") for immediate appeal to the Second Circuit:

> Does the plain language of § 8.4 of the SLA prohibit Capri Sun from recovering ABC's direct profits on Capri Sun's claims arising under the Lanham Act for trademark infringement, unfair competition, and false association?

Dkt. 219.

ABC, in turn, has moved to certify the following question (the "§ 6.3 Issue") for immediate appeal:

> Whether the no-challenge provision contained in Section 6.3 of the Settlement and License Agreement is enforceable with regard to ABC's defense that U.S. Trademark Reg. No. 1,418,517 is functional.

Dkt. 224. Importantly, ABC's request is conditional. It seeks certification only if the Court has certified Capri Sun's proposed question. *Id.*

### B. Applicable Legal Standards

Title 28 U.S.C. § 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

(emphasis in original).

Section 1292(b) "permits a district court, in its discretion, to certify an interlocutory appeal where the decision at issue (1) involves a controlling question of law (2) as to which there

4

is substantial ground for a difference of opinion and (3) as to which an immediate appeal may materially advance the ultimate termination of the litigation." *Chavez v. Occidental Chem. Corp.*, 300 F. Supp. 3d 517, 537 (S.D.N.Y. 2018) (citing *Mejia v. Time Warner Cable Inc.*, No. 15 Civ. 6445 (JPO), 2017 WL 5513638, at *2 (S.D.N.Y. Nov. 17, 2017); *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 46–47 (1995)), *vacated and remanded on other grounds*, 8 F.4th 91 (2d Cir. 2021). "The movant bears the burden of demonstrating that all three of the substantive criteria are met." *Hart v. Rick's Cabaret Int'l, Inc.*, 73 F. Supp. 3d 382, 393 (S.D.N.Y. 2014) (citations omitted).

Typically, certification is "strongly disfavored," *Adar Bays, LLC v. Aim Expl., Inc.*, 310 F. Supp. 3d 454, 456 (S.D.N.Y. 2018), and reserved for "exceptional circumstances," *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 25 (2d Cir. 1990). "[E]ven when the elements of section 1292(b) are satisfied, the district court retains 'unfettered discretion' to deny certification." *In re Barrick Gold Sec. Litig.*, No. 13 Civ. 3851 (SAS), 2015 WL 3486045, at *3 (S.D.N.Y. June 2, 2015) (citation omitted), *abrogated on other grounds, In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600 (S.D.N.Y. 2017).

Ultimately, "[t]he institutional efficiency of the federal court system is among the chief concerns underlying Section 1292(b). The efficiency of both the district court and the appellate court are to be considered, and the benefit to the district court of avoiding unnecessary trial must be weighed against the inefficiency of having the Court of Appeals hear multiple appeals in the same case." *S.E.C. v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 226–27 (S.D.N.Y. 2000) (citing *Forsyth v. Kleindienst*, 599 F.2d 1203 (3d Cir. 1979), *cert. denied*, 453 U.S. 913 (1981); *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir. 1991)).

### C. Capri Sun's Motion

#### 1. Factors 1 & 3: Controlling Question of Law and Materially Advancing the Litigation

Capri Sun, in its motion, jointly addresses the first and third prongs of the § 1292(b) analysis as "closely intertwined." CS Mot. at 4. The Court will do the same.

"A question is 'controlling' if it would either 'terminate the action' or at least 'materially affect the litigation's outcome.'" *Hart*, 73 F. Supp. 3d at 393 (quoting *Consub Del. LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007), *aff'd*, 543 F.3d 104 (2d Cir. 2008), *abrogated in part on other grounds by Shipping Corp. of India, Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 67 (2d Cir. 2009)). "'Controlling' does not mean 'dispositive.' . . . Rather, all that must be shown . . . is that resolution of the issue on appeal could *materially affect* the outcome of litigation in the district court." *LNC Invs., Inc. v. First Fid. Bank*, No. 92 Civ. 7584 (CSH), 2000 WL 461612, at *3 (S.D.N.Y. Apr. 18, 2000) (emphasis in original). And "as to the third requirement, the 'use of § 1292(b) is reserved for those cases where an intermediate appeal may avoid protracted litigation.'" *Hart*, 73 F. Supp. 3d at 393 (quoting *Koehler v. Bank of Berm. Ltd.*, 101 F.3d 863, 865–66 (2d Cir. 1996)). "District courts should hesitate to certify where 'many of the same . . . issues . . . would still have to be litigated' irrespective of the Court of Appeals' decision on the certified question." *Id.* (quoting *Westwood Pharms., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 88 (2d Cir. 1992)).

Capri Sun here does not contend that a ruling by the Second Circuit on the § 8.4 Issue would literally dispose of the action. CS Mot. at 4. Nor could it: that issue merely concerns the species of damages contractually available to Capri Sun, should it prevail on its Lanham Act claims. Instead, Capri Sun argues that the Second Circuit's resolution of the potential contract damages would "materially affect" the outcome of this case by accelerating its resolution. *Id.* at

6

4–5. That is so because, Capri Sun contends, an appellate resolution of the parties' dispute as to the damages available to Capri Sun would enhance the likelihood that the parties will settle before trial. Alternatively, if the damages question is unresolved and the case does not settle, Capri Sun posits a possible scenario in which two trials could become necessary: an initial trial, and then—were Capri Sun to appeal and attain reversal of this Court's holding that § 8.4 does not permit it to recover ABC's profits—a second trial focused on that component of relief. CS Mot. at 4–7.

The Court is unpersuaded by this argument.

In support of its contention that an immediate appeal will improve settlement prospects, Capri Sun relies on the transcript of the March 17, 2022 argument on summary judgment, at which the parties identified the limitation of damages as an issue whose resolution could enhance the likelihood of settlement:

> The Court: You're saying to me that if the damages limitations are resolved conclusively, even if the heart of the matter, the trademark infringement, isn't resolved, that may move the parties to settlement.
>
> [Counsel for ABC]: Yes. Without any promises, I think it will create some clarity of mind for both sides.
>
> . . .
>
> The Court: . . . Let me just ask the plaintiff that same question. Not seeking reargument, but are there particular issues, regardless of how one were to come out, whose resolution would be clarifying to the parties in terms of potential settlement?
>
> [Counsel for Capri Sun]: Yes. I would agree with Mr. Krumholz about this Court's decision on damages.

Dkt. 183 at 84–85.

Viewed in light of ensuing events, however, this exchange does not support certifying the § 8.4 Issue for an interlocutory appeal. Critically, the Court *heeded* counsels' joint request.

Notwithstanding holding that the Lanham Act claims were incapable of resolution on summary judgment, the Court resolved the § 8.4 damages limitation question. The Court also resolved a host of other contested issues, including the parties' numerous *Daubert* challenges. These rulings presumably put the parties in yet a better position to commonly assess the case for settlement purposes. Such did not, however, yield any settlement progress, at least any that has been reported to the Court. The parties might have, for example, entered into a conditional settlement agreement, keyed to a particular resolution by the Second Circuit of the § 8.4 Issue on an interlocutory appeal. But they did not. And, unlike at the argument on summary judgment, where the parties jointly indicated that a resolution of the § 8.4 Issue would aid settlement, there is no joint recommendation of an interlocutory appeal. Quite the contrary, ABC opposes certification. Thus, although the interlocutory appellate resolution of a contested issue always conceptually has the capacity to promote settlement by narrowing the areas in dispute, there is no longer a convincing basis to view the § 8.4 Issue as decisive, *i.e.*, as the toggle between settlement and trial.

This circumstance—under which no more can be said than that interlocutory resolution of the § 8.4 would generally tend to promote settlement—falls short of those in which an interlocutory appeal has been certified as apt to "materially advance" the litigation. This is not a situation for instance, in which one appellate outcome would terminate the case. *See, e.g.*, *Juarez v. Nw. Mut. Life Ins. Co., Inc.*, No. 14 Civ. 5107 (KBF), 2014 WL 12772237, at *2 (S.D.N.Y. Dec. 30, 2014) (finding that the increased prospects of settlement in the event of an affirmance met § 1292(b)'s material advancement prong where reversal by the Circuit would "would end this action"). Nor would the appellate resolution of the damages limitation narrow the scope of claims to be tried. *See, e.g.*, *Fed. Hous. Fin. Agency v. UBS Ams., Inc.*, 858 F. Supp.

2d 306, 338 (S.D.N.Y. 2012) (finding material advancement prong met where affirmance would spur settlement *and* reversal "ha[d] the potential to end or at a minimum significantly restrict the scope of this litigation"), *aff'd*, 712 F.3d 136 (2d Cir. 2013). Rather, appellate resolution of this question would merely shape whether—in the event of liability on ABC's part—its direct profits would be among the damages considered by the jury, and whether evidence as to such profits was therefore admissible for this purpose.

For that reason, *American Geophysical Union v. Texaco Inc.*, on which Capri Sun relies, is inapposite. The district court there found the material advancement factor met because a reversal would have disposed of the case. Indeed, the court noted, "*the parties agree[d]*" that an interlocutory affirmance "would make overall settlement likely." 802 F. Supp. 1, 29 (S.D.N.Y. 1992) (emphasis added), *aff'd*, 37 F.3d 881 (2d Cir.), *order amended and superseded*, 60 F.3d 913 (2d Cir.), *and aff'd*, 60 F.3d 913 (2d Cir. 1994). Such is not the case here. *See* ABC Opp. at 5 (not conceding that interlocutory affirmance would further settlement prospects).

Capri Sun next argues that an immediate appeal of the § 8.4 Issue would avoid the need to empanel a second jury, in the event the Court's construction of § 8.4 were overturned on appeal following trial. CS Mot. at 6–7. But Capri Sun's premise that an interlocutory appeal would yield material efficiencies is unconvincing. To begin, this argument presupposes (1) that the jury will find ABC liable—thus triggering an inquiry into damages—in the initial trial, and (2) that the Second Circuit will, on direct appeal, reverse this Court's construction of § 8.4, so as to necessitate a new trial as to disgorgement-of-profits damages. But if either event does not occur, an interlocutory appeal of this issue would *delay* the outcome of this litigation, and force the parties, and the Circuit, to expend resources they otherwise would not have. *See In re Liddle & Robinson, L.L.P.*, No. 20 Civ. 865 (ER), 2020 WL 4194542, at *5 (S.D.N.Y. July 21, 2020)

9

(denying interlocutory review where "it [was] not apparent to the Court how [movant]'s arguments support a finding that an appeal will advance or shorten resolution of the dispute, even assuming that this litigation only concerned these [discrete] issues"). And any projection by Capri Sun that it is destined to prevail as to liability at trial would be bravado. As a review of the Court's summary judgment decision reflects, the evidence supplies ABC with substantial arguments against liability, including based on its central argument that the particular shape of Capri Sun's pouch does not give rise to a strong mark.

"The efficiency of both the district court *and* the appellate court [must] be considered" on a § 1292(b) application. *See Credit Bancorp*, 103 F. Supp. 2d at 226 (emphasis added). Here, the course that would yield greater efficiency here is an unknown. There are plausible scenarios in which an interlocutory appeal could spawn more—or less—work at both the district and appellate levels. Relevant here, barring settlement, Capri Sun's bid for an interlocutory appeal would create an outsize risk of multiple appeals in this case—one on interlocutory review, and a second following trial. That scenario would less likely arise were the Circuit to address the case for the first time following trial. In the event of multiple appeals, "the benefit to the district court of obviating needless trial time" would not necessarily "outweigh the inefficiency to the Court of Appeals in hearing multiple appeals in the same case." *Tocco v. Real Time Resols., Inc.*, No. 14 Civ. 810 (WHP), 2015 WL 5086390, at *2 (S.D.N.Y. Mar. 4, 2015) (quoting *In re Currency Conversion Fee Antitr. Litig.*, No. 21 M. 95 (WHP), 2005 WL 1871012, at *3 (citing *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir. 1991))).

Capri Sun also overstates the burdens presented by a remand to tabulate disgorgement damages after appellate reversal on the § 8.4 Issue. For one, as ABC notes, it is unsettled in this Circuit whether disgorgement of profits under the Lanham Act is a jury determination or an

10

equitable determination for the court. The Second Circuit has noted that the Lanham Act's "invocation of equitable principles as guideposts in the assessment of monetary relief [in § 1117(a)] vests the district court with some degree of discretion in shaping that relief," *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir. 1992), but has not conclusively ruled on whether the disgorgement remedy is equitable and thus outside the Seventh Amendment right to a jury trial, *id.* at 1541 (2d Cir. 1992) (declining to "reach the issue of whether it was appropriate for the jury to calculate profits" where an accounting was not available). The three circuit courts to rule have held that profit disgorgement under the Lanham Act is an equitable remedy.[2]

Instructively, district courts in this Circuit are not in agreement on this issue, such that there would be a substantial basis in law for this Court, rather than a jury, to determine the amount of disgorgement damages on remand. Some district courts have so held, drawing on the Circuit's dicta in *Basch* that "when awarding an accounting of profits under the Lanham Act, a district court maintains discretion to shape such relief subject to the principles of equity." *Tiffany (NJ) LLC v. Forbse*, No. 11 Civ. 4976 (NRB), 2012 WL 1918866, at *12 (S.D.N.Y. May 23, 2012), *vacated in part on other grounds*, 589 F. App'x 550 (2d Cir. 2014) (summary order); *see also G.A. Modefine S.A. v. Burlington Coat Factory Warehouse Corp.*, 888 F. Supp. 44, 45 (S.D.N.Y. 1995) ("[T]he *Basch* case makes it clear that in the trademark infringement context, the remedy of disgorgement of profits is equitable in nature."); *id.* at 46 (denying jury trial on

---

[2] *See Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1358 (11th Cir. 2019) ("The two Courts of Appeals that have addressed this precise question—the Sixth and Ninth Circuits—have agreed with our conclusion that a claim for an accounting and disgorgement of profits under the Lanham Act is equitable in nature and, therefore, that the Seventh Amendment's guarantee of a jury trial does not apply." (citing *Ferrari S.p.A. v. Roberts*, 944 F.2d 1235, 1248 (6th Cir. 1991); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1074–76 (9th Cir. 2015))).

11

that ground). Another has held that, "because a determination of a defendant's profits for the purposes of a damages award under the Lanham Act is equitable in nature, there is no right to a jury trial on that issue," but nonetheless "accept[ed] the aid of an advisory jury." *Bruce Kirby, Inc. v. Laserperformance (Eur.) Ltd.*, No. 13 Civ. 297 (JAM), 2021 WL 328632, at *12 (D. Conn. Feb. 1, 2021). Others have found that "the key to resolving [this disagreement] lies in determining the purpose of these additional remedies." *Gucci Am., Inc. v. Accents*, 994 F. Supp. 538, 540 (S.D.N.Y. 1998) (citation omitted); *see id.* at 540–41 (assigning issues of willfulness and intent to the jury, and also actual profits, on the theory that Congress had not expressed a clear intent to the contrary). In *Daisy Grp., Ltd. v. Newport News, Inc.*, a court in this District explained the necessity to

> determine whether the remedy sought is more legal than equitable in nature. The Second Circuit [in *Basch*] has explained that there are three distinct bases for an award of profits for a violation of the Lanham Act. Profits are available where (1) the defendant has been unjustly enriched; (2) the plaintiff has sustained damages from the infringement; or (3) such an award is necessary to deter a willful infringer from doing so again. Thus, an award of profits may serve as restitution for unjust enrichment, as a rough proxy measure of plaintiff's damages, or to protect the public at large from fraud regarding the source and quality of consumer goods and services.
>
> Whether a profits remedy is more legal than equitable in nature depends on which of these theories provides the basis for the requested profits award.

999 F. Supp. 548, 552 (S.D.N.Y. 1998) (cleaned up); *see id.* (granting jury trial on ground that plaintiff sought "profits as a rough proxy measure of its damages"); *see also Ideal World Mktg., Inc. v. Duracell, Inc.*, 997 F. Supp. 334, 339 (E.D.N.Y. 1998) (assigning disgorgement of profits to jury on theory that such relief was historically "considered ancillary [and] intended to make the wronged party whole" and "largely served a remedial function in trademark cases").

Moreover, were Capri Sun to obtain an appellate reversal if the Court's ruling on the § 8.4 Issue, the disgorgement issue does not appear factually complex. It is possible that that

issue could be resolved by the Court based on undisputed facts. Even if not, a jury trial on that question would likely be short in length and tightly confined in scope. Such would mitigate the inefficiencies of a second trial. And a second jury trial might be necessary for other reasons—if for example, other pretrial or trial rulings by this Court were disturbed on appeal.

In these circumstances, the Court cannot find that institutional efficiencies favor the certification of an interlocutory appeal. There are too many uncertainties in the route that this case may travel, and Capri Sun's application embeds too many debatable assumptions, for the interest in efficiency to favor certifying such an appeal. *See Credit Bancorp*, 103 F. Supp. 2d at 226–27. The Court accordingly denies Capri Sun's motion to certify the § 8.4 Issue for an interlocutory appeal.[3]

### 2. Factor 2: Substantial Ground of Difference of Opinion

Although the Court has denied Capri Sun's motion for failure to establish the first and third § 1292(b) factors, in the interest of completeness, the Court also analyzes the second factor.

"A substantial ground for difference of opinion exists when '(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit.'" *Chavez*, 300 F. Supp. 3d at 538 (quoting *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 539 (S.D.N.Y. 2014) (further citations omitted)).

Capri Sun concedes that there is no conflicting authority on the § 8.4 Issue, as neither party has located any precedent addressing this contract language. CS Mot. at 7. Its argument as to this factor is that whether § 8.4 permits disgorgement of profits as a form of "direct damages"

---

[3] The analysis, however, would be different—as might be the Court's resolution of an application to certify an interlocutory appeal on this issue—were the parties to enter into a binding settlement agreement conditioned on particular resolution(s) by the Second Circuit of the § 8.4 Issue. In the event of such an agreement, the parties are at liberty to make a new motion for certification of an interlocutory appeal of this issue.

13

is a question of first impression. *See id.* at 9 (citing *Klinghoffer*, 921 F.2d at 25; *Am. Geophysical Union*, 802 F. Supp. at 30; *In re Trace Int'l Holdings, Inc.*, No. 04 Civ. 1295 (KMW), 2009 WL 3398515 (S.D.N.Y. Oct. 21, 2009)).

Capri Sun misconstrues the governing standard. Where there is no conflict in the case law, and where an issue is unique to the litigation at hand, "[t]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Hart*, 73 F. Supp. 3d at 393 (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)); *see also Chechele v. Standard Gen. L.P.*, No. 20 Civ. 3177 (KPF), 2022 WL 766244, at *9 (S.D.N.Y. Mar. 14, 2022) (quoting *In re Flor* for same proposition); *Dill v. JPMorgan Chase Bank, N.A.*, No. 19 Civ. 10947 (KPF), 2021 WL 3406192, at *8 (S.D.N.Y. Aug. 4, 2021) (same; finding no ground for substantial disagreement where movants "d[id] not attempt to argue that the underlying issues are difficult"). Instead, a court must "analyze the strength of the arguments in opposition to the challenged ruling" and decide "whether the issue for appeal is truly one on which there is a substantial ground for dispute." *In re Flor*, 79 F.3d at 284 (citation omitted).

As to the § 8.4 Issue, it turns on the construction of contract language limiting the parties' liability, and which survived the SLA's termination. Section 8.4 exempts either party from

> any *consequential, indirect, punitive, incidental or special damages, including lost profits*, whether foreseeable or unforeseeable and whether or not that Party has been advised of the possibility thereof, arising from *any cause of action whatsoever*, including those based upon contract, warranty, strict liability or negligence, *related to this agreement* or any breach hereof.

(emphases added).

The Court has construed that language to preclude Capri Sun from pursuing disgorgement damages. *See* SJ Op. at 146–51. Capri Sun asserts that (1) the Court should have evaluated the

14

categories of potential damages not based on the SLA as construed under principles of New York contract law, but instead under the Lanham Act; and (2) under § 8.4, ABC's profits are recoverable as "direct damages" to Capri Sun, which § 8.4 does not prohibit. CS Mot. at 2–3.

These arguments, however, reprise those made on summary judgment, and for the reasons stated in its summary judgment decision, the Court continues to find them unpersuasive. The Court expressly considered the "threshold question" whether § 8.4's reference to "any cause of action whatsoever . . . related to this agreement" encompassed Capri Sun's Lanham Act claims, and held that it did, including in light of Second Circuit caselaw broadly construing the term "related to." SJ Op. at 146–51. And, the Court held, applying precedents construing New York contract law, direct damages are typically expectation damages. Such damages would not include disgorgement of ABC's profits insofar as, under the SLA, ABC instead would be obligated to pay Capri Sun a fixed royalty. *See id.* at 149–50.

Although these issues were ones of first impression, they do not pose "particularly difficult" questions as to which there is "substantial ground for difference of opinion." *Chavez*, 300 F. Supp. 3d at 538. And Capri Sun has not so argued in seeking certification of an interlocutory appeal. *See* CS Mot. at 7–9 (discussing only absence of on-point caselaw); 2–3 (submitting that Court should have analyzed Capri Sun's damages claims under Lanham Act). The second § 1292(b) factor, too, thus does not warrant certification for immediate appeal. *See W. Waterproofing Co., Inc. v. Zurich Am. Ins. Co.*, No. 20 Civ. 3199 (AJN), 2022 WL 1501087, at *4 (S.D.N.Y. May 11, 2022) (finding no substantial ground for difference of opinion where an issue of first impression "[was] not a particularly difficult one[, and] the Court's holding follow[ed] from a straightforward reading of the [policy provision at issue]"); *Murray v. UBS Sec., LLC*, No. 12 Civ. 5914 (KPF), 2014 WL 1316472, at *6 (S.D.N.Y. Apr. 1, 2014) (finding

no substantial ground for difference of opinion where, lacking case law, the provision was clear on its face).

### D. ABC's Motion

ABC premised its § 1292(b) motion on the condition that this Court grant Capri Sun's motion. In light of the Court's denial of Capri Sun's motion, the Court denies ABC's motion as moot.

### CONCLUSION

For the foregoing reasons, the Court denies Capri Sun's motion for an interlocutory appeal, and denies ABC's conditional cross-motion for an interlocutory appeal as moot.

The Clerk of Court is respectfully directed to terminate the motions pending at docket numbers 219 and 224.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: August 5, 2022
New York, New York